760 P.2d 1189

**John M. HOLMES, Plaintiff–Appellant,**

v.

**UNION OIL COMPANY OF CALIFORNIA, a California corporation authorized to do business in the State of Idaho; and Puregro Company, Inc., a California corporation authorized to do business in the State of Idaho, Defendants–Respondents.**

**No. 16640.**

Court of Appeals of Idaho.

Aug. 1, 1988.

Rehearing Denied Aug. 1, 1988.

W. Craig James, Skinner, Fawcett & Mauk, Boise, for plaintiff-appellant.

Candy Wagahoff–Dale, Moffatt, Thomas, Barrett and Blanton, Chtd., Boise, for defendants-respondents.

## SUBSTITUTE OPINION

The Court's prior opinion, dated November 30, 1987, is hereby withdrawn.

BURNETT, Judge.

This is an employment termination case. John Holmes, a discharged employee, appeals from a summary judgment dismissing his claims for breach of an employment contract and for intentional infliction of emotional distress. He presents three is-

sues: (1) whether the district court correctly determined that he was an employee at will; (2) whether his employment contract contained an implied covenant of good faith and fair dealing; and (3) whether the facts can be viewed to support a genuine claim for intentional infliction of emotional distress. For reasons explained below, we affirm the summary judgment in part, vacate it in part, and remand the case for further proceedings.

The salient facts are undisputed. At various times from 1959 to 1985, Holmes was employed by the PureGro Company, Inc., or by a predecessor organization, Farm Service. During this period, PureGro became a wholly owned subsidiary of Union Oil. Holmes never had a contract specifying a term of employment or limiting the reasons for which he could be discharged. During his years of service, he became a plant supervisor at Kimberly, Idaho, responsible for the preparation of agricultural chemical products. Between 1975 and 1983, Holmes was given performance reviews rating him average or better. He received annual pay increases. But Holmes had a drinking problem, and it caught up with him in the summer of 1984.

On July 13 of that year, Holmes was arrested and charged with driving while under the influence of alcohol ("DUI"). This was Holmes' second DUI offense in a five-year period, subjecting him to potentially severe criminal penalties. *See* I.C. § 18-8005(2). Fearful that a conviction would lead to incarceration and cost him his job, Holmes notified his supervisor at work. In an effort to assist Holmes, the PureGro management—in concert with the Director of Union Oil's alcoholism program —enrolled him in a residential alcohol treatment program in Arizona. Holmes attended the program while the DUI charge remained pending. Union Oil paid all expenses.

The day before he completed the program, Holmes met with John Newton, director of the alcoholism program. Newton presented Holmes with a five-page letter describing Holmes' previous alcohol abuse and outlining a continuing, mandatory alcohol rehabilitation plan. Newton explained that the company would support Holmes' request for probation on the DUI charge, with an understanding that participation in the continuing rehabilitation program would be one of the conditions of probation. The rehabilitation program letter was signed by Holmes' immediate supervisor and by Union Oil's northwest region medical director. Newton instructed Holmes to read the letter and to sign it, thereby indicating either acceptance or rejection of its terms. Holmes understood that failure to comply with the continuing alcohol rehabilitation program would result in immediate discharge. Holmes signed and accepted the program.

After his return to Idaho, Holmes pled guilty to the DUI charge. As requested by Holmes and his employer, he was placed on probation for eighteen months and directed to participate satisfactorily in the Union Oil rehabilitation program. The court also gave Holmes a restricted driver's license, authorizing him to drive only for work-related purposes and for attendance at Alcoholics Anonymous ("AA") meetings. The court suspended a 360-day jail sentence and a $2,000 fine.

Unfortunately, about seven months later, while still on probation, Holmes was stopped by a police officer who observed him driving out of Kimberly with two snowmobiles in tow. Holmes claimed that he was driving to Ketchum for an AA meeting and that he merely intended to ride the snowmobiles with a friend on the way home. Holmes was cited for driving without privileges—i.e., for violating the terms of his restricted license. Although Holmes did attend an AA meeting in Ketchum after receiving the citation, the court did not accept his story about the real purpose of the trip. The magistrate suspended Holmes' license for an additional 540 days, revoking his probation on the DUI, and reinstated the original jail sentence. So far as the record discloses, Holmes did not appeal the magistrate's decision.

After learning of these events, Union Oil terminated Holmes' employment. Holmes

sued the company. As noted above, he alleged breach of an express or implied contract of employment, breach of an implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. He sought punitive as well as compensatory damages on the claim for breach of contract. The parties filed cross-motions for summary judgment. The district court ruled in favor of Union Oil on all points. This appeal followed.

The standards for reviewing summary judgments are well known. Summary judgment is appropriate only when genuine issues of material fact are absent and the case can be decided as a matter of law. I.R.C.P. 56(c); *Moss v. Mid–American Fire and Marine Insurance Co.*, 103 Idaho 298, 647 P.2d 754 (1982). Controverted facts are viewed in favor of the party aggrieved by the summary judgment. Where, as here, a jury has been requested, the aggrieved party is also entitled to the benefit of reasonable inferences drawn from the evidentiary facts. *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982). This entitlement is not affected by cross-motions for summary judgment where the motions advance different theories. That arguably is the case here. Accordingly, as we examine the issues presented, we will view the record in best light to Holmes.

### I

We first discuss the question of employment at will. The long-standing rule in Idaho, as in most states, is that unless an employee is hired pursuant to a contract which specifies the duration of the employment, or limits the reasons for which the employee may be discharged, the employment is "at the will" of either party. Either the employer or the employee may terminate the relationship at any time for any reason without incurring liability. *MacNeil v. Minidoka Memorial Hospital*, 108 Idaho 588, 701 P.2d 208 (1985); *Jackson v. Minidoka Irrigation District*, 98 Idaho 330, 563 P.2d 54 (1977). The only recognized exception to this rule in Idaho is that an employer may incur liability when the motivation for discharge contravenes public policy. *Id. See generally* Annot.,

*Modern Status of Rule that Employer May Discharge At–Will Employee for Any Reason*, 12 A.L.R.4th 544 (1984).

We recognize that the at-will doctrine has come under increasing criticism in the last two decades. *See, e.g.,* Blades, *Employment at Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power*, 67 COLUM.L.REV. 1404 (1967); Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith*, 93 HARV.L.REV. 1816 (1980); Note, *Protecting Employees At Will Against Wrongful Discharge: The Public Policy Exception*, 96 HARV.L.REV. 1931 (1983); H. PERRITT, EMPLOYEE DISMISSAL LAW AND PRACTICE § 1.12 (2d ed. 1987). Some courts and commentators have opined that the rule is an anachronistic remnant of laissez-faire economic policies prevailing at the end of the nineteenth century. Others have defended the doctrine as an embodiment of two principles—freedom of contract and, perhaps more important, mutuality of contract—which remain viable in the late twentieth century. In any event, no court has yet directly overturned the at-will doctrine. Rather, the courts have narrowed the doctrine through the public policy exception; and some courts in other states have formulated additional exceptions.

Here, Holmes does not press a claim based upon any violation of public policy. Moreover, it is clear from the record that Holmes never had entered into a written contract of employment. He does not assert that any oral agreement provided for a specific duration of employment or limited the reasons for which he could be discharged. However, he does assert that the oral terms of his employment were altered by the letter outlining the alcohol rehabilitation program and by certain company policy manuals. Union Oil denies that any of these written instruments removed Holmes from his status as an employee at will.

### A

■ The rehabilitation program letter expressed the company's urgent concern

about Holmes' alcohol abuse and the pending DUI case. It set forth a plan which integrated Holmes' personal rehabilitation with completion of his court-ordered probation. The letter said the following:

1. You will enroll in and comply with any alcohol and drug abuse rehabilitation program operated by the city, county or state that is endorsed by the court....

2. Beginning immediately, *you will attend at least three Alcoholics Anonymous meetings in your community each week—for eighteen months....*

3. Beginning now and for the remainder of your career with Farm Service (The Union Oil Company of California), you will not ingest any alcohol into your system in any quantity or any strength, not even one single beer.

4. Beginning now and for the remainder of your career with Farm Service (Union Oil Company of California), you will not ingest or inject any other legal or illegal mind or mood altering drugs into your system....

5. You will be monitored by the Union Oil Company Medical Department for the remainder of your career. In addition, at the request of the Union Oil Company Medical Department, or its agents, you will consent to any test at any time to determine the use of alcohol, or other mind or mood altering drugs.

It may be necessary for you to plead guilty to the July 13, 1984 charge in order for the judge and district attorney to accept the above five-point program. If the judge and district attorney do accept the above program, it will be with the following commitment and understanding on your part, with no concessions or compromises:

A. *We will ask the court for probation or a suspended sentence on all fines and penalties for a period of at least eighteen months.*

B. *The above five-point program and this letter will become part of your probation.*

C. The Union Oil Company of California Medical Department will monitored [sic] you and this program for the District

Court Fifth Judicial District, State of Idaho, and will report your progress to your probation officer as often as the courts deem necessary.

D. *Should you accept this program in spirit and intent, as it is written, and then not adhere to it to the letter, or should there be a recurrence of this self-inflicted problem or should you leave the employ of Farm Service (Union Oil Company) for any reason, it will be considered a violation of your probation. I will then notify the court, district attorney, and your probation officer by certified mail, they will issue a warrant for your arrest, and your future will belong to the State of Idaho.*

E. *If you successfully complete this eighteen month program and if the court and district attorney agree, the July 13, 1984 charge will be reduced to reckless driving, which is a misdemeanor, and we will at least save your license.*

You have been described by your management as a competent and capable employee when you are not drinking. Farm Service (The Union Oil Company) wants you and your contribution; however, they want you in complete control of your physical and mental faculties. Anything less will not be satisfactory nor will it be acceptable. Therefore, I have been authorized by your management to inform you that should you accept this program in spirit and intent, as it is written, and then not adhere to it to the letter, they (your management) will make a very serious administrative decision regarding your future with Farm Service (Union Oil Company of California)—you will be terminated. [Original emphasis deleted, other emphasis added.]

The letter made it clear that violation of its terms could be cause for discharge and likely also would be a violation of probation. The converse—that violation of a condition of probation would also be a violation of the letter and, therefore, cause for discharge—was not made quite so clear. But cause for discharge is not the issue here. The district court did not decide, and we will not decide for the first time on

appeal, whether good cause existed to fire Holmes when he violated his probation. Rather, the issue here simply is whether the letter altered Holmes' at-will status by limiting the possible reasons for discharge or by providing a certain duration of employment.

Although the letter enunciated certain possible grounds for discharge, it nowhere stated that such grounds would constitute the sole reasons for dismissal. Nor did the letter purport to be a comprehensive treatment of potential causes for discharge. However, the letter did contain language arguably relevant to the duration of employment. It indicated that the court had been asked to approve a plan of probation for eighteen months, during which Holmes would participate as an employee in the company's rehabilitation program.

■ Whether an employer and employee have reached a meeting of minds on a particular aspect of employment, such as duration of employment, is a question of fact. *See generally Watson v. Idaho Falls Consolidated Hospitals, Inc.*, 111 Idaho 44, 720 P.2d 632 (1986). In this case we think the rehabilitation program letter reasonably *could* be viewed by a finder of·fact as evidence of a mutual understanding that Holmes would be an employee of Union Oil for at least the eighteen-month period of court-ordered probation—unless, of course, he quit or was fired for cause.[1] Because Holmes is entitled to every reasonable inference in his favor on appeal from a summary judgment, we are constrained to hold that a genuine issue of material fact exists as to whether the parties agreed on a certain duration of employment. Accordingly, the summary judgment, insofar as it is premised upon a theory of at-will status at the time when Holmes was discharged, must be set aside.

**B**

Holmes also has argued that he was removed from at-will status by language found in certain Union Oil policy manuals. This issue will arise on remand if Holmes offers the manuals as additional evidence that he was not an at-will employee. Accordingly, we will discuss the manuals now.

■ Most jurisdictions that have considered the question have recognized that employment at will may be altered by the terms of general policies promulgated by management and communicated to employees. Thus, an employer may represent that employees will be discharged only for good cause or for specified reasons. Such a representation, if communicated to the employee, relied upon by him, and not otherwise effectively disclaimed by the employer, takes the employment outside the at-will category. *Watson v. Idaho Falls Consolidated Hospitals, Inc., supra; see also Reid v. Sears, Roebuck and Company,* 790 F.2d 453 (6th Cir.1986); *Shapiro v. Wells Fargo Realty Advisors,* 152 Cal.App. 3d 467, 199 Cal.Rptr. 613 (1984); *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980); *Pine River State Bank v. Mettile,* 333 N.W.2d 622 (Minn.1983); *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987); *Frazier v. Minnesota Mining and Manufacturing Company,* 82 Or.App. 328, 728 P.2d 87 (1986). On the other hand, if a policy manual is not relied upon by the employee, or if it contains an effective disclaimer, it will not disturb the at-will relationship. *Spero v. Lockwood, Inc.,* 111 Idaho 74, 721 P.2d 174 (1986).

■ In this case Holmes admitted, during his deposition, that Union Oil had issued no written policy concerning termination of employees. This was confirmed by the president of PureGro in his deposi-

---

1. We do not hold or intimate that every job training or rehabilitation program could alter an employee's at-will status. This case involves a unique nexus between an employee's participation in an employer-provided program and a grant of probation for a specific period in a criminal case at the mutual request of the employer and employee. Even in this unique cir-

cumstance, an employer desiring to maintain an at-will relationship could make an express disclaimer of intent to limit potential reasons for discharge or to create any expectation of continued employment for a certain duration. The record presently before us contains no such disclaimer.

tion. Nonetheless, Holmes now invites attention to two manuals having an indirect bearing on employees' rights. The first is a brochure entitled "The Alcoholic Employee Can Be Helped." Holmes points to vague language at the end of the pamphlet which seems to indicate that if supervisors and managers are willing to intervene and get help for alcoholic employees, these employees might have a chance to continue their careers. The brochure is a laudable exhortation to management to be aware of alcoholism in the workplace. However, we glean from it no policy regarding duration of employment nor any limitation upon reasons for discharging employees. It is not relevant to an issue of at-will employment.

■ Holmes next relies on portions of the company's Personnel Procedure Manual. This manual, in a version since superseded, delineates two categories of employees in its description of forms to be used for hiring, termination, transfer and employee benefits. The manual refers to "permanent" and "temporary" employees.

The legal significance of this terminology is unclear. In general, the phrase "permanent employment," when referring to the duration of employment, has been held to signify employment of indefinite rather than limited duration. Consequently, the word "permanent" has been deemed consistent with at-will employment status. *See, e.g., Wolfe v. Graether,* 389 N.W.2d 643 (Iowa 1986) ("permanent" means at will unless accompanied by additional consideration); *Kotick v. Desai,* 123 A.D.2d 744, 507 N.Y.S.2d 217 (1986); *Benoir v. Ethan Allen, Inc.,* 514 A.2d 716 (Vt.1986). However, in Idaho our Supreme Court has hinted to the contrary. In *Harkness v.*

*City of Burley,* 110 Idaho 353, 715 P.2d 1283 (1986), the Court partially overturned a summary judgment against a police officer who claimed that he had been fired without cause, depriving him of property without due process. In discussing the officer's property interest in public employment, the Court said that his designation by the city as a "permanent" (as opposed to probationary) employee "strongly inferred" that he did not merely serve "at will." *Id.* at 358, 715 P.2d at 1288. The applicability of this statement to a *private* employment case, like the one before us, is obscure. Moreover, its applicability to other public employment cases may have been undercut by *Schoonover v. Bonner County,* 113 Idaho 916, 750 P.2d 95 (1988), where the Supreme Court described two long-time (and presumably non-probationary) sheriff's deputies as "employees at will." *Id.* at 922, 750 P.2d at 101.

But we need not authoritatively construe the word "permanent" in this appeal. Here, the manual containing the word "permanent" was not distributed to Holmes in the course of his employment. It was intended for, and circulated to, higher level management personnel. There is no evidence that Holmes relied upon it in becoming or remaining an employee. Moreover, in 1983—approximately one year before Holmes' troubles began—the company amended the category titles, changing the term "permanent" to "regular." [2] Accordingly, we conclude that the manual's pre-amendment reference to "permanent" employees is not relevant to the present issue of at-will status.

---

**2.** A memorandum to regional and district managers contained the following statement explaining the amendment:

We no longer call "permanent" employees *permanent,* instead we call them "regular" employees. This has been brought about because of court cases involving "wrongful" discharges and/or the "at-will" discharges. Basically, some people are contending that they were "permanent" employees, and that the employer does not now have the right to terminate them in the absence of misconduct. Please do not say or imply to applicants or employees that they will have a job forever,

regardless of circumstances. We must all remain aware of the reality that our employment can end for a variety of reasons at the Company's obligation. [Emphasis original.] This statement constitutes an express disclaimer putting managers on notice that any previously ambiguous language in the Personnel Procedure Manual was not intended to suggest a commitment of employment security. *See generally* H. PERRITT, EMPLOYEE DISMISSAL LAW AND PRACTICE § 4.10 (2d ed. 1987). If Holmes claims knowledge of the manual, he also is bound by the amendment and disclaimer.

## II

■ Holmes next argues that Union Oil breached a covenant, implied in law, of good faith and fair dealing. He contends that he was unfairly terminated when he was participating satisfactorily in the alcohol rehabilitation program, notwithstanding the fact that his violation of driving restrictions led to revocation of his probation. As we stated earlier, the nexus between a probation violation and cause for discharge is a debatable point. But we do not think the outcome of that debate turns on any postulated covenant of good faith and fair dealing.

We acknowledge that a strong argument can be made for imputing such a covenant to any employment contract. After all, our Supreme Court has held that many kinds of commercial contracts impose duties of good faith and fair dealing upon each contracting party. *E.g., White v. Unigard Mutual Insurance Co.,* 112 Idaho 94, 730 P.2d 1014 (1986) (insurance contract); *Luzar v. Western Surety Company,* 107 Idaho 693, 692 P.2d 337 (1984) (surety agreement). *See generally* RESTATEMENT (SECOND) OF CONTRACTS § 205. Some state courts have imputed a covenant of good faith to employment contracts for specific purposes. *See, e.g., Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (1985); *Tameny v. Atlantic Richfield Company,* 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980); *Fortune v. National Cash Register Company,* 373 Mass. 96, 364 N.E.2d 1251 (1977); *Flanigan v. Prudential Federal Savings & Loan Assoc.,* 720 P.2d 257 (Mont.1986). However, the Idaho courts have not yet deemed it appropriate to articulate a covenant so broad that it would go beyond the public policy exception to the at-will doctrine, creating liability for termination of employees whose activities were not otherwise worthy of judicial protection. *See Staggie v. Idaho Falls Consolidated Hospitals, Inc.,* 110 Idaho 349, 715 P.2d 1019 (Ct.App.1986).

The real significance of a covenant broader than the public policy exception is that it would impose liability for a termination decision which does not offend society in general but which is a product of bad faith directed personally at a particular employee.[3] Such a broadened covenant, applicable only to bad faith cases, would stop short of embracing every case in which good cause for discharge was contested. Indeed, if the covenant were stretched to include every dispute over cause, it would effectively abolish the doctrine of employment at will. A covenant this broad has been uniformly rejected. *See, e.g., Pittman v. Larson Distributing Company,* 724 P.2d 1379 (Colo.Ct.App.1986); *Morriss v. Coleman Company, Inc.,* 241 Kan. 501, 738 P.2d 841 (1987); *Cockels v. International Business Expositions, Inc.,* 159 Mich.App. 30, 406 N.W.2d 465 (1987); *Hunt v. IBM Mid America Employees Federal Credit Union,* 384 N.W.2d 853 (Minn.1986); *Perry v. Sears, Roebuck & Co.,* 508 So.2d 1086 (Miss.1987); *Hillesland v. Federal Land Bank Association of Grand Forks,* 407 N.W.2d 206 (N.D.1987); *Hinson v. Cameron,* 58 Okl.B.A.J. 1666, 742 P.2d 549 (1987); *Thompson v. St. Regis Paper Company,* 102 Wash.2d 219, 685 P.2d 1081 (1984).

Thus, if a covenant of good faith were deemed to exist, it would create liability only upon a showing of bad faith. Here, the record is devoid of any evidence tending to show bad faith directed personally at Holmes by Union Oil. Accordingly, we have no occasion in this case to enunciate an implied covenant of good faith going beyond the existing public policy exception. We hold that the district court correctly dismissed Holmes' cause of action predicated upon such a covenant.

## III

■ Finally, we consider Holmes' claims for punitive damages and for intentional infliction of emotional distress. We have already determined that no bad faith has been shown. Consequently, there could be no recovery of punitive damages. *Cheney*

---

**3.** Connecticut explicitly has equated the implied covenant with a discharge contravening public policy, thereby broadening the public policy exception. *Magnan v. Anaconda Industries, Inc.,* 193 Conn. 558, 479 A.2d 781 (1984).

*v. Palos Verdes,* 104 Idaho 897, 665 P.2d 661 (1983).

■ The claim for damages due to emotional distress is also without merit. Holmes has alleged no facts demonstrating extreme and outrageous conduct on the part of the defendants. *See Brown v. Fritz,* 108 Idaho 357, 699 P.2d 1371 (1985) (justification for award of damages for emotional distress depends on quantum of outrageousness of defendant's conduct). The facts of this case do not approximate the situations depicted in cases where employees have recovered damages in tort for emotional distress caused by discharge. *See, e.g., Alcorn v. Anbro Engineering, Inc.,* 2 Cal.3d 493, 86 Cal.Rptr. 88, 468 P.2d 216 (1970) (supervisor made abusive and racially motivated remarks when terminating employee); *Agis v. Howard Johnson Company,* 371 Mass. 140, 355 N.E.2d 315 (1976) (manager fired waitresses in alphabetical order to coerce them into disclosing whether one was stealing from the restaurant). *Compare Gibson v. Hummel,* 688 S.W.2d 4 (Mo.Ct.App.1985) (employee fired after taking polygraph could not state a cause of action for intentional infliction of emotional distress). Accordingly, we uphold the district court's dismissal of this claim.

In summary, the judgment of the district court is affirmed as to Holmes' claim of breach of an implied covenant of good faith and as to his claim of intentional infliction of emotional distress. The judgment is vacated as to Holmes' claim of breach of employment contract. The case is remanded for further proceedings on that question, and on the issues of liability and damages that would arise if Holmes were found not to have been an at-will employee when he was discharged. Because neither party is wholly favored by this decision, no costs or attorney fees are awarded on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.