887 P.2d 1094

Denise THOMPSON, Plaintiff–Appellant,

v.

The CITY OF IDAHO FALLS, a municipal corporation, Richard A. Straub, individually and in his official capacity as manager of the Idaho Falls Aquatic Center, Defendants–Respondents.

No. 20814.

Court of Appeals of Idaho.

Dec. 16, 1994.

Skinner, Fawcett & Mauk, Boise, for appellant. Chris Kronberg, argued.

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for respondents. Dale W. Storer, argued.

WALTERS, Chief Judge.

This is an appeal from a district court's order granting summary judgment against plaintiff-appellant, Denise Thompson, in an action alleging breach of contract, violation of due process rights, breach of the covenant of good faith and fair dealing, and tortious interference with contract and prospective business advantage. Thompson brought this action following her termination as an employee for respondent City of Idaho Falls. Concluding that no genuine issues of material fact exists, we affirm the summary judgment.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In November 1986, Denise Thompson commenced employment with the City of Idaho

Falls as assistant manager of the Idaho Falls Aquatic Center. At that time, she was given a copy of the City's Personnel Policy and Procedures Handbook (the handbook) and its Code of Conduct, and on November 17, 1986, she signed a statement acknowledging that she had received them and agreed to abide by them. Shortly thereafter, she was given an updated version of the handbook, the relevant portions of which were the same as the previous version.

On March 2, 1990, Thompson received a performance appraisal and was placed on thirty days' probation. The performance appraisal set forth certain employment duties with which Thompson had to comply over the thirty-day period. On March 23, 1990, Thompson was terminated.[1] Thompson filed a grievance with the division director of Parks and Recreation, John Johnson, and hearings were held on April 3 and 5, 1990. Johnson concluded that termination of Thompson's employment was proper, and on April 6, 1990, Johnson wrote to Thompson, setting forth the reasons for her discharge as follows: (1) Inability to work with public and staff; (2) Failure to comply with Aquatic Center operating procedures, including sign-in/out procedures; and (3) Inability to maintain a working relationship with the Aquatic Center manager.

Thompson then appealed to Craig Lords, the city municipal services director. A hearing was held on April 25, 1990, before Lords and Arthur Chandler, a city council member appointed by the mayor. Lords and Chandler affirmed Johnson's decision, and on May 4, 1990, the mayor signed the personnel action terminating Thompson, effective March 23, 1990. On October 2, 1990, Thompson filed a Notice of Tort Claim with the city clerk. On November 4, 1991, Thompson filed the complaint in the instant case and on April 23, 1992, filed an amended complaint.

The amended complaint named as a defendant the respondent Richard Straub, individ-

---

1. The parties dispute whether Thompson's employment was merely suspended on this date or whether this was the actual termination date. In light of our holding in this case, this factual issue is not material and does not preclude summary

judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Garzee v. Barkley,* 121 Idaho 771, 774, 828 P.2d 334, 337 (Ct.App.1992).

**590**

ually and in his official capacity as manager of the Aquatic Center. It also named the respondent City as a defendant, under the doctrine of *respondeat superior.* As against both respondents, Thompson alleged breach of contract, breach of covenant of good faith and fair dealing and deprivation of the right to due process. As against respondent Straub, Thompson alleged intentional interference with contract and prospective business advantage.

On May 6, 1993, the respondents filed a motion for summary judgment as to all four counts of Thompson's amended complaint, and on June 3, 1993, the district court held a hearing on the motion. The district court granted summary judgment in favor of the respondents. Thompson appeals.

## II.

## ANALYSIS

■ On a motion for summary judgment, all facts and inferences must be drawn in favor of the nonmoving party, and summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Perkins v. Highland Enterprises, Inc.,* 120 Idaho 511, 516, 817 P.2d 177, 182 (1991).

### A. *Breach of Contract*

■ Unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party and the employer may terminate the relationship at any time for any reason without incurring liability. *Sorensen v. Comm Tek, Inc.,* 118 Idaho 664, 666, 799 P.2d 70, 72 (1990); *see also Metcalf v. Intermountain Gas Co.,* 116 Idaho 622, 624, 778 P.2d 744, 746 (1989). A limitation on the right of the employer or employee to terminate the employment can be express or implied. *Sorensen,* 118 Idaho at 666, 799 P.2d at 72. A limitation may be implied if, from all the circumstances surrounding the employment relationship, a reasonable person could conclude that both parties intended that the employer's (or the

employee's) right to terminate the employment relationship at will had been limited by the implied-in-fact agreement of the parties. *Id.*

The district court concluded that there existed an at-will employment relationship. On appeal, Thompson asserts that she was not an at-will employee and that the handbook created an implied-in-fact employment contract limiting the reasons for termination. Alternatively, Thompson argues that her March 2, 1990, performance appraisal established a minimum thirty-day period of employment.

### 1. Handbook and Code of Conduct

■ The Idaho Supreme Court has recognized that an employee handbook can constitute an element of the contract. *Metcalf,* 116 Idaho at 625, 778 P.2d at 747. In *Metcalf,* the court explained:

> Unless an employee handbook specifically negates any intention on the part of the employer to have it become a part of the employment contract, a court may conclude from a review of the employee handbook that a question of fact is created regarding whether the handbook was intended by the parties to impliedly express a term of the employment agreement.

116 Idaho at 625, 778 P.2d at 747. In the instant case, we conclude that even if the handbook expressed certain terms of the employment agreement, nothing in the handbook limited the reasons for which Thompson could be discharged. Moreover, the handbook, viewed as a whole, negates any intent to transform an at-will employment relationship into an employment contract requiring just cause for termination. Most significant is the language expressed in the section entitled, "Nature of Employment:"

> All persons employed by the City are employed at the discretion of the Mayor and City Council and shall have no right to continued employment or employment benefits, except as may be agreed in writing and expressly approved by the City Council.

Another section of the handbook states that "[n]othing herein shall be deemed to be nor

shall be construed to grant any employee any right or expectation of continued employment."

Thompson relies on the following excerpts from the handbook to support her claim that the handbook created an implied-in-fact agreement limiting the reasons for which the City could terminate her employment. First, the handbook states that its purpose is to help "maintain and assist in further developing a healthy and stable relationship between the City of Idaho Falls and its employees." In the section entitled "Employee Recruitment," the handbook further provides that "all employees of the City of Idaho Falls will be employed and retained solely on the basis of their ability and efficiency." Thompson states that this language expressly limits termination to cases involving an employee's lack of ability or efficiency. We disagree. While this language indicates the basis on which employees will be hired and retained, it does not limit the reasons for which employees may be discharged.[2]

Thompson also points to language under the "Discipline" section of the handbook which states that employees have a "duty" to "maintain standards of cooperation, efficiency and economy" when working for the City and that when the employee's "work habits, attitudes, productive [sic] or personal conduct fall below acceptable levels, the supervisor is to point out deficiencies to the employee." Thompson argues that this language demonstrates that there existed an agreement between the City and Thompson that "as long as she performed her job at an acceptable level she would not be terminated." This argument is unavailing. The language set forth above creates necessary conditions for continued employment but cannot be read to guarantee a specific term of employment or to place limits on the reasons for discharge.

In addition, Thompson cites the handbook's provision that permanent employees would serve an initial six-month probationary period and the provision that full-time permanent employees are "entitled to all regular benefits." Thompson argues that pursuant to these provisions, upon completion of a six-month probationary period, she was granted "permanent" employee status and was therefore not merely an employee at-will. In support of her contention, Thompson cites *Harkness, infra.* In *Harkness,* the city council passed a resolution making a police officer a permanent employee. 110 Idaho at 358, 715 P.2d at 1288. Our Supreme Court held, "By use of the term 'permanent,' the resolution strongly inferred that Harkness was no mere 'at-will' employee." *Id.* Unlike the handbook in the instant case, however, the city council resolution in *Harkness* did not explicitly state that employees had no right to continued employment.

In addition, Thompson misinterprets the import of the handbook's provisions referring to "permanent" employees. Unlike the resolution in *Harkness,* the handbook cannot be read to provide employees with permanent employment. When read in context, the handbook's reference to "permanent" employees does not refer to duration of employment; rather, the reference was used only to differentiate between employees working year-around either part-time or full-time, who receive benefits, and "W.A.E." (when actually employed) employees, who work seasonally and do not receive employment benefits. We also note that the legal significance of the term "permanent" is often unclear. *Holmes v. Union Oil Co. of California,* 114 Idaho 773, 779, 760 P.2d 1189, 1195 (Ct.App.1988). In *Holmes,* this Court stated,

> In general, the phrase "permanent employment," when referring to the duration of employment, has been held to signify employment of indefinite rather than limited duration. Consequently, the word "permanent" has been deemed consistent with at-will employment status.

*Id.* (citations omitted). We are not persuaded by Thompson's argument that the handbook's reference to "permanent" employees altered her at-will status.

Finally, Thompson quotes from the Code of Conduct, the violation of which, ac-

---

2. We also find it significant that this language falls under the heading, "Employee Recruitment," whereas the language denying an employee's right to continued employment falls under the heading "Nature of Employment."

cording to the handbook, was just cause for "issuing warning, suspension, or dismissal." The Code of Conduct lists twenty "examples" of conduct considered unacceptable for City employees. Thompson states that the Code limits grounds for disciplinary action against an employee to those examples set forth in the Code. We disagree. The Code unequivocally states that "[t]hese examples are set out for the purpose of illustration and do not pretend (sic) to be all-inclusive." Therefore, the reasons for discharge were clearly not confined to those twenty enumerated in the Code of Conduct. *See Jones v. EG & G Idaho, Inc.,* 111 Idaho 591, 726 P.2d 703 (1986); *Arnold v. Diet Center, Inc.,* 113 Idaho 581, 746 P.2d 1040 (Ct.App.1987).

We conclude that no genuine issue of material fact existed as to whether the contents of the handbook and Code of Conduct implied any agreement other than one for an at-will employment relationship.

## 2. Performance Appraisal

On March 2, 1990, Thompson received a performance appraisal which set forth areas in which Thompson's performance needed improvement and which notified her that she would be placed on thirty days' probation. The document states, "Failure to comply with stated corrective measures during 30-day probation or thereafter will be grounds for immediate dismissal." Thompson asserts that even if up until the performance appraisal was signed she was an at-will employee, the performance appraisal replaced her at-will status with a contract of at least thirty days' duration, during which time she could only be terminated for noncompliance with the requested improvements listed in the appraisal.

■ Where an at-will employee has entered into a probationary agreement with the employer for a definite period of time, the probationary agreement has been held to create a genuine issue of material fact as to the existence of an agreement establishing the duration of employment. *Holmes,* 114 Idaho at 778, 760 P.2d at 1194. However, *Holmes* is distinguishable from the instant case. Here, the handbook provided that employees "shall have no right to continued employment ... except as may be agreed in writing and expressly approved by the City Council." Because the performance appraisal was not approved of by the city council, it could not alter Thompson's at-will employment status.

Moreover, under Thompson's logic, every time an employer provides a substandard employee with a list of areas in which the employee must improve during a certain time period, there would exist a genuine issue of material fact as to whether the employer has thereby established a duration of employment or has limited the grounds for discharge to only the specific problem areas listed. Such reasoning is unsound. *See Mitchell v. Zilog,* 125 Idaho 709, 714, 874 P.2d 520, 525 (1994). Further, such a holding would elevate deficient employees to a more secure status than those who are performing satisfactorily and could serve as a disincentive for employers to provide inadequate employees with "a second chance." Under the circumstances present in this case, we hold that there was no genuine issue of material fact as to whether Thompson's performance appraisal created a contract providing a thirty-day period of continued employment or limited the grounds for termination to those listed in the appraisal.

## B. *Deprivation of Civil Rights*

■ Thompson argues that she was not afforded due process of law in the termination of her employment. Pursuant to 42 U.S.C. § 1983, this constitutional right is enforceable against persons acting under color of state law. A violation of due process occurs in this context only if Thompson had a legitimate property interest in her job. *See Harkness v. City of Burley,* 110 Idaho 353, 715 P.2d 1283 (1986). In *Harkness,* the Idaho Supreme Court set forth the parameters of such a property interest, as established by the United States Supreme Court:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

110 Idaho at 355–56, 715 P.2d at 1285–86 (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). In order for an employee to have a property interest in continued employment, the employee must be more than an employee at-will. *Arnzen v. State, Dept. of Law Enf.,* 123 Idaho 899, 904, 854 P.2d 242, 247 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 877, 127 L.Ed.2d 73 (1994). In light of our determination that Thompson was an at-will employee, we conclude that Thompson had no property interest in her employment. Consequently, there existed no genuine issue of material fact regarding Thompson's due process claim.

### C. Covenant of Good Faith and Fair Dealing

The Idaho Supreme Court first recognized an implied-at-law covenant of good faith and fair dealing in employment-at-will relationships in *Metcalf v. Intermountain Gas Co.,* 116 Idaho 622, 778 P.2d 744 (1989) (plurality opinion), reaffirmed in *Sorensen v. Comm Tek, Inc.,* 118 Idaho 664, 799 P.2d 70 (1990). In *Metcalf,* the Court articulated the covenant of good faith and fair dealing as follows: "Any action by either party which violates, nullifies or significantly impairs any benefit of the employment contract is a violation of the implied-in-law covenant." 116 Idaho at 627, 778 P.2d at 749. However, the covenant " 'does not create a duty for the employer to terminate the at-will employee only for good cause.' " *Id.* (quoting *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (1985)). *See also, Farnworth v. Femling,* 125 Idaho 283, 288, 869 P.2d 1378, 1383 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994); *Olson v. Idaho State University,* 125 Idaho 177, 868 P.2d 505 (Ct.App.1994).

The covenant requires that the parties perform in good faith the obligations imposed by their agreement. *Idaho First Nat'l Bank v. Bliss Valley Foods,* 121 Idaho 266, 288, 824 P.2d 841, 863 (1991). An implied covenant of good faith and fair dealing should not be applied to impose any duty which is contrary to the agreement as executed by the parties. *George v. University of Idaho,* 121 Idaho 30, 37, 822 P.2d 549, 556 (Ct.App.1991).

Upon review of the record, we conclude that Thompson received all of the benefits promised under her employment-at-will contract and that in terminating Thompson, the City simply exercised its rights under the terms of the employment agreement. We hold that no genuine issue of material fact existed with respect to Thompson's claim that the City violated the covenant of good faith and fair dealing.

### D. Intentional Interference with Contract and Prospective Business Advantage

During and subsequent to Thompson's employment with the City, she had a written agreement with the Bonneville County chapter of the American Red Cross which provided that, in exchange for certifying Thompson as a Red Cross instructor, Thompson would teach Red Cross instructional courses. Thompson taught these courses at the Aquatic Center to the Center's employees until some time after her termination, when the respondent, Richard Straub, manager of the Aquatic Center, contacted the Red Cross, stating that he did not want Thompson to continue to teach the courses at the Aquatic Center. In her claim against Straub individually, Thompson asserted that Straub intentionally interfered with her contract with the Red Cross and her prospective business advantage.

In resolving this issue, our first inquiry is whether Thompson was required to comply with the Idaho Tort Claims Act (ITCA) in bringing her action against Straub, an employee of the City. I.C. § 6–906 of the ITCA provides:

**Filing claims against political subdivision or employee—Time.**—All claims against a political subdivision arising under

the provisions of this act and all claims against an employee of a political subdivision for any act or omission of the employee *within the course or scope of his employment* shall be presented to and filed with the clerk or secretary of the political subdivision within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later.

(emphasis added). Based on this statute, Thompson was obligated to file a notice of claim against Straub with the city clerk or secretary, provided that Straub was acting within the course or scope of his employment in contacting the Red Cross. I.C. § 6–903(e) of the ITCA provides:

For the purposes of this act and not otherwise, it shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment and without malice or criminal intent.

Thompson failed to rebut the presumption that Straub was acting within the scope of his employment as manager of the Aquatic Center when he contacted the Red Cross. Indeed, in her amended complaint, Thompson admitted that Straub was "at all times pertinent hereto an employee of the City of Idaho Falls, *acting within the scope of his employment....*" (emphasis added). As manager of the Aquatic Center, it was within the scope of Straub's employment to decide that he did not wish to make the Center available for Thompson to teach instructional courses to members of the Center's staff. ▮ Because Straub acted within the scope of his employment in contacting the Red Cross, Thompson was required to comply with the provisions of the ITCA in bringing her claim against Straub. We conclude that she did not. I.C. § 6–907 of the ITCA provides, in pertinent part:

**Contents of claims—Filing by agent or attorney—Effect of inaccuracies.**—All claims presented to and filed with a governmental entity shall accurately describe the conduct and circumstances which brought about the injury or damage, describe the injury or damage, state the time and place the injury or damage occurred, state the names of all persons involved, if known, and shall contain the amount of damages claimed....

In her Notice of Tort Claim filed with the city clerk, Thompson failed to make any claim against Straub for interference with contract or prospective business advantage, nor did she "describe the conduct and circumstances which brought about" this alleged injury or comply with the other specifications of I.C. § 6–907 regarding this claim. Because Thompson failed to comply with I.C. § 6–907 and because the 180–day time limitation has now expired, *see* I.C. § 6–906, we hold that Thompson's claim against Straub is barred.

## III.

### CONCLUSION

We conclude that the district court correctly ruled that Thompson was an at-will employee as a matter of law. Therefore, summary judgment was properly granted with respect to Thompson's breach of contract and due process claims. We further hold that there existed no genuine issue of material fact regarding Thompson's claim for breach of the covenant of good faith and fair dealing. Finally, we conclude that Thompson's failure to comply with the provisions of the ITCA precludes her claim against Straub for interference with contract and prospective business advantage.

Accordingly, we affirm the summary judgment entered in favor of the respondents. Costs to the respondents; no attorney fees are awarded on appeal.

LANSING and PERRY, JJ., concur.