112 P.3d 820

**Rafal BEREZOWSKI and Danuta Berezowski, husband and wife, Plaintiffs–Appellants,**

v.

**Dale SCHUMAN and Renee Schuman, husband and wife, Defendants–Respondents.**

No. 29931.

Supreme Court of Idaho, Boise, March 2005 Term.

May 5, 2005.

Wetzel & Wetzel, P.L.L.C., Coeur d'Alene, for appellants. Steven C. Wetzel argued.

John Magnuson, Coeur d'Alene, for respondents. John F. Magnuson argued.

JONES, Justice.

This is an appeal from an order granting partial summary judgment, which was certified as final under I.R.C.P. 54(b). The order disposed of all claims in the complaint, leaving a counterclaim for subsequent determination. The case pits one pair of subdivision dwellers against another: the appellants, Rafal and Danuta Berezowski, (the Berezowskis) contend the respondents, Dale and Renee Schuman, (the Schumans) are using their land contrary to the terms of the subdivision's Covenants, Conditions, and Restrictions (CCRs). The respondents, of course, contend otherwise. The district court ruled that the items complained of were not in violation of the CCRs. We affirm in part and reverse in part.

## I.

### BACKGROUND

Both parties reside in the Best Hill Ranch Subdivision (Best Hill) in Coeur d'Alene, Idaho. Each of the properties in the subdivision is subject to the same set of CCRs. The CCRs established a homeowners association whose Board of Directors (Board) was empowered to enforce the CCRs, to adopt Rules and Regulations (Rules) governing uses and construction within the subdivision, and to establish an Architectural Control Committee (ACC). Both the CCRs and the Rules provide restrictions and requirements governing the use of subdivision property and the construction of improvements upon it. Best Hill lot owners wishing to build anything within the subdivision must apply for and obtain permission from the Board or its ACC.

The CCRs allow a Best Hill resident to pursue court action in the event of noncompliance with the CCRs. The CCRs provide, in

pertinent part: "The failure of any Lot Owner to comply with the provisions of the Declaration, Articles of Incorporation or Bylaws shall give rise to a cause of action in favor of the Association and any aggrieved Lot Owner for the recovery of damages, or for injunctive relief, or both."

In addition, the Rules provide an appeal process, available to an applicant or other lot owner wishing to contest the approval or disapproval of an application for a property improvement. That section provides: "If an owner contests the disapproval or conditional approval of the application or if another owner contests the approval of the application, then either or both may appeal the determination." The appeal process "shall be in accordance with the Uniform Arbitration Act (Idaho Code Section 7–901 et seq., or successor statute), but the panel of arbitrators (either one (1) or three (3) at the discretion of the Board) shall be appointed by the Board."

The Berezowskis took issue with the Schumans' uses of their property: the style of a fence on their property, the presence of an unattached storage shed, and the manner in which they were storing their RV.

***The Fence.*** In June of 1999 the Schumans purchased Lot 10 of Block 1 in Best Hill. The previous owners of this lot constructed a fence (the Fence) on the property that, according to the Rules, was required to be wood and was supposed to "match" a "rail fence" on Best Avenue. The Fence was wood but not a rail fence. Whether the original Fence was approved by the Board or ACC is uncertain. The CCRs only required that fences be made of wood, with any modifications being subject to Board approval. After acquiring Lot 10, the Schumans and the owner of Lot 8, Eve Knudtsen, purchased the lot between them, Lot 9. They subdivided it and each party took the half adjacent to their original lot. The Schumans proposed to move the Fence to their new property boundary and connect it to another fence on their property. To do this, the Schumans had to add an extra 58 feet of fence, which they proposed to do in the same style as the original Fence. The Schumans submitted their proposal to the ACC in August 2001, and the ACC approved it. Dale Schuman

was on the ACC when it considered his proposal, but recused himself. The Board later approved the ACC's action. Neither the Berezowskis nor any other lot owner appealed the approvals.

***The Shed.*** The Schumans also applied for approval to place an unattached storage shed (the Shed) on their property. The ACC approved the application and the Board later approved the ACC action. Nobody appealed these decisions, either. However, in 2000— some fifteen months before the Schumans sought approval for their Shed—a property owner not involved in this case submitted a home design plan that included an unattached garage. The ACC did not approve the garage, stating in its decision that "unattached structures are not allowed." This decision cited no previous decisions of the Board or ACC, nor any provision of the Rules or CCRs.

***The RV.*** Section 4.6 of the CCRs requires all RVs parked longer than 48 hours to be parked either in the lot owner's garage or in an area "screened from view of the street." Section 7.1 of the Rules requires RVs to be parked "only in the owner's garage, or off the property." Despite the Schumans' efforts to screen their RV, it is still visible from the street. In July 2002, the Board received a letter from an attorney, who purported to represent a number of landowners in Best Hill, indicating that the RV was violating the CCRs. On July 30, 2002, the Board called a special meeting and decided the Schumans' efforts to screen their RV were adequate. Nobody appealed this decision.

In October of 2002, the Berezowskis sued the Schumans, alleging the Fence, Shed, and RV all violated the CCRs, the Rules, or both. They sought to enjoin these uses. The Schumans answered and counterclaimed, alleging the Berezowskis were guilty of their own non-conforming uses. The Schumans moved for partial summary judgment on all of the Berezowskis' claims and, after a hearing, the district court concluded the alleged nonconforming uses did not run afoul of the CCRs or Rules.

In support of their motion, the Schumans submitted affidavits of four of the five Board members. These affidavits were not properly notarized, so the Schumans submitted new affidavits, this time properly sworn. The Berezowskis objected to these affidavits, claiming the supplemental affidavits contained untrue statements and statements based on facts not within the personal knowledge of the affiants. In arriving at its decision, the district court overruled the objections and explained it would consider the admissible statements and disregard the inadmissible statements. The judge did not specify which statements he believed were admissible and which were not. After the hearing, the court issued its order granting summary judgment, certified it for appeal, and this appeal followed.

## II.

## STANDARD OF REVIEW

 The standard of review that guides district courts in considering motions for summary judgment is the very same standard of review we employ when considering orders on those motions. *Sun Valley v. Rosholt, Robertson & Tucker,* 133 Idaho 1, 3, 981 P.2d 236, 238 (1999). Summary judgment is appropriate only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). The burden to demonstrate the absence of a genuine issue of material fact always falls to the moving party. *Thompson v. City of Idaho Falls,* 126 Idaho 587, 887 P.2d 1094 (Ct.App. 1994). In cases such as this one, where the controversy will be tried to the court without a jury, "the judge is not constrained to draw inferences in favor of the party opposing a motion for summary judgment" and is instead "free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts." *Blackmon v. Zufelt,* 108 Idaho 469, 470, 700 P.2d 91, 92 (Ct.App.1985) citing *Riverside Dev. Co. v. Ritchie,* 103 Idaho 515, 519, 650 P.2d 657, 661 (1982).

## III.

## DISCUSSION

 Covenants restricting the free use of land are valid and enforceable in Idaho. *Pinehaven Planning Bd. v. Brooks,* 138 Idaho 826, 829, 70 P.3d 664, 667 (2003). When we interpret restrictive covenants, we generally apply the same rules we employ when we interpret contracts. *Id.* However, since restrictive covenants are in derogation of the common law right to use land for all lawful purposes, the Court will not extend by implication any restriction not clearly expressed. *Id.* Further, all doubts are to be resolved in favor of the free use of land. *Id.*

 That said, we begin with the Shed. The district court ruled that the Shed did not violate the CCRs or Rules. The court noted that neither the CCRs nor the Rules expressly prohibited the Shed and stated that the ACC had the discretionary authority to approve it or deny it. In considering the CCRs and Rules together and as a whole, we believe that the appeal process was intended to be the sole remedy for those uses for which Board or ACC approval was required. In other words, as we read the CCRs and Rules, the provision in the CCRs, allowing a private right of action to enforce the CCRs, does not apply in cases where one must seek approval for a particular structure or use. This provision provides legal recourse in the event of the "failure of any Lot Owner to comply with the provisions of" the CCRs. On the other hand, we believe the appeal process provided for in the Rules was the appropriate mechanism to contest a discretionary decision not involving non-compliance with, or the violation of, a provision of the CCRs. Having failed to avail themselves to that remedy, they are precluded from challenging the ACC's decision now.

 We note also that the Berezowskis' sole basis for arguing the Shed violated the CCRs was the ACC's 2000 decision denying another neighbor's application to build an unattached garage. Even assuming the ACC's decisions on unattached structures are inconsistent and that the 2000 decision was erroneous, nothing in the CCRs requires any precedent to be given to prior decisions.

We turn next to the Fence. Section 4.7 of the CCRs provides: "Only wood fences shall be used on the Property. No alterations or modifications are permitted to Best Avenue fence by residents without Board approval. All resident installed fencing must have Board approval." The ACC approved the Schumans' proposal for the Fence and nobody appealed. Subsequently, the Board approved the ACC's action and, again, no appeal was taken. The Berezowskis failed to avail themselves to their provided-for remedy—an appeal under the Rule provision—and are bound by the decisions. Even if the Berezowskis could challenge the decision on the Fence, the Berezowskis' contention that the Fence violates the provision of the Rules requiring that it "match" the Best Avenue rail fence is unavailing for two reasons. First, though the Rules do not indicate whether this requires that the fence exactly match or merely harmonize with the rail fence, the CCRs appear to permit alterations or modifications of the Best Avenue fence with Board approval. Here, such approval was obtained, and the Berezowskis do not contend they did not receive notice of the meeting or decision. Second, the CCRs provide that they prevail over the Rules in the event of a conflict.[1]

Next, we consider the RV. Section 4.6 of the CCRs provides that RVs shall be parked in the owner's garage or "in an area screened from view of the street." Section 7.1 of the Rules provides that the RV must be in the owner's garage or off the property. Clearly, the intent of these two provisions is that an RV should not be visible from the street. The method by which RVs are stored is not, unlike the Fence and Shed, subject to an application and approval process. These provisions are outright contractual requirements, not subject to the discretion of the Board or ACC. The variance procedures provided in the Rules were not invoked. The photographs in the record clearly show that the RV is not screened from view of the street. The district court erred when it deferred to the Board's determination that the RV complied with the applicable requirements. It should have based its decision on the evidence in the record, which shows a violation of Section 4.6 of the CCRs and Section 7.1 of the Rules. The court's decision on this issue is, therefore, reversed.

## IV.

## ATTORNEY FEES

Finally, there remains the issue of attorney fees. We decline to award any. Both sides seek attorney fees under Section 8.2 of the CCRs. That section provides:

> If legal action is brought to interpret or enforce compliance with the provisions of this Declaration, the Articles, the Bylaws or the rules and regulations of the Association, the prevailing party shall be entitled to judgment against the other party for its reasonable expenses, court costs and attorney's fees in the amount awarded by the court. . . .

In light of the mixed results in this case, we cannot say that either the Schumans or the Berezowskis have prevailed. Thus, we do not award fees to either party.

## V.

## CONCLUSION

The district court's ruling on the Fence and Shed is affirmed. The court's ruling on the RV is reversed and the case is remanded for entry of an order consistent with this opinion. The affidavits about which the Berezowskis complain are not necessary to the decision and we therefore do not consider the issues pertaining to them. We award neither attorney fees nor costs on appeal.

Chief Justice SCHROEDER, and Justices TROUT, EISMANN and BURDICK concur.

---

1. The Berezowskis point to a provision in the Rules which applies the most stringent requirement in the event of a conflict with the CCRs. However, this provision only applies to the architectural control provisions in Article IX and does not apply to the fencing provision contained in Article IV, which applies to permitted uses.