# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37279

JAMES R. WYLIE, )
)
    Plaintiff-Appellant, )
)   **Boise, May 2011 Term**
v. )
)   **2011 Opinion No. 57**
STATE OF IDAHO, IDAHO )
TRANSPORTATION BOARD, and CITY )   **Filed: May 25, 2011**
OF MERIDIAN, )
)   **Stephen W. Kenyon, Clerk**
    Defendants-Respondents. )
_____ )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Honorable Timothy Hansen, District Judge.

The judgment of the district court is <u>affirmed</u>.

Davison, Copple, Copple & Copple, Boise, for appellant. Heather A. Cunningham argued.

Honorable Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent Idaho Transportation Board. Chris Kronberg argued.

William Nary, Meridian City Attorney, Meridian, for respondent City of Meridian. Emily Kane argued.

_____

J. JONES, Justice.

    James R. Wylie, the owner of a subdivision located along Chinden Boulevard in the City of Meridian, brought this action seeking a declaration that the City, with the cooperation of the Idaho Transportation Department, improperly denied access for his property directly onto that State highway. The district court granted summary judgment to the Respondents, dismissing Wylie's complaint on the ground that he had failed to present a justiciable issue. We affirm the judgment.

# I.

## Factual and Procedural History

In August of 2005, the City of Meridian (the City) passed Ordinance No. 05-1171 (the Ordinance) amending its Unified Development Code regarding development along state highways. The Idaho Transportation Department (ITD) collaborated with the City in drafting the Ordinance. The purpose of the Ordinance was to:

> 1) limit access points to state highways in order to maintain traffic flow and provide better circulation and safety within the community and for the traveling public, 2) to preserve right-of-way for future highway expansions, and 3) design new residential development along state highways to mitigate noise impacts associated with such roadways.

The Standards section of the Ordinance regarding State Highway 20-26 (SH 20-26) provides:

> If an applicant proposes a change or increase in intensity of use, the owner shall develop or otherwise acquire access to a street other than the state highway. The use of the existing approach shall cease and the approach shall be abandoned and removed.
> > a. No new approaches[1] directly accessing a state highway shall be allowed.

However, "[t]he decision making body may consider and apply modifications to the standards of this section upon specific recommendation of the Idaho Transportation Department." Additionally, the design and construction standards provide that "[t]he applicant shall have an approved permit from the Idaho Transportation Department for construction of any access to the state highway and/or any construction done in the highway right of way." The Ordinance also provides that the "width of right-of-way reservations shall be as set forth by the ITD."

Subsequent to the City's adoption of the Ordinance, Sea 2 Sea, LLC, (Sea 2 Sea), applied for the annexation and rezone of approximately ten acres of real property located at the corner of Chinden Boulevard[2] and Linder Road (the Property). The City annexed the Property into its jurisdiction and approved an initial zoning of the Property from RUT, Rural Urban Transition Zone of Ada County, to C-G, General Retail and Service Commercial of the City. Contemporaneous with the annexation and zoning, the City also approved a preliminary plat for

---

[1] The Ordinance also contained a definition for "approach," which is "an access from a state highway. The access may be a driveway, common drive, private street, or a commercial/industrial drive aisle."

[2] All references to Chinden Boulevard are equivalent to references to SH 20-26.

the Property, which consisted of 4 commercial buildings and 1 common lot, and identified the development as the Knighthill Center Subdivision.

In conjunction with the annexation, zoning, and approval of the preliminary plat, the City entered into a development agreement (the Agreement) with Sea 2 Sea and Foothill Knights, LLC. Among other things, the Agreement conditioned the development of Knighthill Center Subdivision on: 1) compliance with all City ordinances "in effect at the time of the development;" 2) development of the property in substantial compliance with the January 5, 2006, preliminary plat; 3) signage indicating an exit towards W. Everest Lane; and 4) evidence of a recorded cross access easement for access to W. Everest Lane.[3] The Agreement also provides that the terms of the Agreement are binding upon all successors in interest, and that the Property shall be de-annexed if any conditions contained in the Agreement, its incorporated documents, or any City ordinance, are not met.

The Agreement incorporated the City's May 9, 2006, Findings of Fact and Conclusions of Law and Decision and Order (2006 Annexation/Zoning Order). The 2006 Annexation/Zoning Order includes a May 9, 2006, Staff Report (2006 Staff Report), which identifies additional conditions and specifications for the development of the Property. The 2006 Staff Report provides, among other things, that "[t]he subject property does have frontage along Chinden Boulevard (State Highway 20-26) but is not proposing direct access to that facility."[4]

After executing the Agreement, Sea 2 Sea conveyed the Property by warranty deed to James R. Wylie (Wylie) and his wife. Approximately one year later, Wylie applied for, and obtained, a modification of the Agreement to allow for a total of six lots in the development, rather than five. This modification was approved by the City but was never signed by Wylie. Wylie acknowledged in a letter accompanying this application that "[w]e agree with, and do not

---

[3] Everest Lane is a street located adjacent to Knighthill Center Subdivision which provides direct access to Chinden Boulevard via a signalized intersection.

[4] The Staff Report also includes an analysis of compliance with the City's Comprehensive Plan. In regard to Chapter VII, Goal IV, Objective D, Action item 2, which restricts curb cut and access points on collector and arterial streets, the report provides:

> *The Idaho Transportation Department (ITD) has previously submitted letters to the City stating that their policy for access to a Type IV Principal Arterial will be at intersections only, and spaced at one-half mile intervals in urban areas. ITD allows approaches (other than intersections) in special cases and on a temporary basis. Staff finds that the proposal of no access point to Chinden Boulevard (SH 20-26) meets the location requirements of ITD.*

(emphasis in original).

intend to change the access points, utility connections or common lot landscaping and buffering that were approved on the previous preliminary plat."

However, in February of 2009, Wylie applied for a variance from the City to obtain a right-in/right-out access point to State Highway 20/26 and to reduce the ITD right-of-way adjacent to Chinden Boulevard from 100 feet to 70 feet. The City denied the variance request because of the Ordinance and because Wylie would not suffer any undue hardship without the variance. The City also found that granting the variance would be detrimental to the health, safety and welfare of the public.

The City's denial of Wylie's variance request was accompanied by an April 7, 2009, Staff Report (2009 Staff Report). The 2009 Staff Report included a letter from ITD denying Wylie's application for an encroachment permit to access SH 20-26 from the Knighthill Center Subdivision. The letter indicates that ITD does not issue encroachment permits when local roads are available, and that Knighthill Center Subdivision already had access to Chinden Boulevard via Linder Road, Everest Land and Gertie Place. The letter also notes that: 1) the requested access could create a potential hazard for the existing traffic flow on Chinden Boulevard; 2) Everest Lane already provides access to Chinden by means of a signalized intersection; 3) the proposed access would be inconsistent with the Property's preliminary plat; and 4) the requested access would be inconsistent with the long-term planning for the highway as adopted by COMPASS.[5] The 2009 Staff Report also indicates that Wylie was appealing the denial of his encroachment permit with ITD.

Wylie filed this declaratory judgment action in district court the day after the City denied his variance application. In a Second Amended Complaint Wylie requested the court to declare that ITD has exclusive jurisdiction to control access from the Property to SH 20-26 and that the Ordinance is void. He then moved for summary judgment on the requested declarations, and the City filed a cross-motion for summary judgment. The district court granted summary judgment in favor of the City because the Agreement contained a commitment by the developer/owner not to seek direct access to SH 20-26. The court held the term was binding on Wylie as a subsequent

---

[5] COMPASS is the acronym for Community Planning Association of Southwest Idaho, an association of local governments working together to plan for the future of the region. The agency conducts this work as the metropolitan planning organization (MPO) for northern Ada County and Canyon County. The federal government requires the formation of an MPO when an urban area reaches 500,000 people.

developer/owner of the Property thereby rendering any decision in the case advisory and non-justiciable.

## II.

### Issues on Appeal

I.      Did the district court err in determining that Wylie's claims are non-justiciable because the development agreement is binding on Wylie and contains a commitment not to seek direct access to SH 20-26 from Knighthill Center Subdivision?

II.      If Wylie's claims are justiciable, is Ordinance No. 05-1171 preempted or ultra vires because it usurps the exclusive authority of ITD to control access to a state highway?

## III.

### Discussion

#### A. Standard of Review

This Court reviews an order for summary judgment pursuant to the same standard used by the district court.

> Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). Disputed facts should be construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. This Court exercises free review over questions of law.

*Martin v. Camas County ex rel. Bd. of Comm'rs,* 150 Idaho 508, 511, 248 P.3d 1243, 1246 (2011).

#### B. There Are No Justiciable Claims Under the Agreement.

The district court determined that, notwithstanding the provisions of the Ordinance, it had to find in favor of the City because the Agreement contained an unambiguous commitment by Wylie's predecessor in interest not to seek direct access to SH 20-26. The district court also ruled that the access-limitation provision in the Agreement did not usurp the authority of ITD because: 1) ITD was not a signatory to the Agreement; and 2) the Agreement did not limit ITD's ability to issue an encroachment permit.

ITD argues that the district court's decision should be affirmed because Wylie's right to seek access to SH 20-26 has been contracted away via the Agreement. Furthermore, ITD argues that because Wylie did not seek declaratory relief regarding the Agreement, there is no basis to review the enforceability of that document. The City similarly argues that the decision should be affirmed because Sea 2 Sea entered into the Agreement voluntarily, Wylie is bound by the terms of the Agreement, and the Agreement does not usurp the authority of ITD to issue encroachment permits.

Wylie argues that there is no enforceable waiver in the Agreement regarding his ability to seek access from the Knighthill Center Subdivision to Chinden Boulevard. He also argues that, even if the provision can be construed as a waiver of the right of access, it is void because Idaho statutes preempt the authority of the City to control access to state highways. We affirm the holding of the district court with regard to claims based on the Agreement, because the Agreement contains an unambiguous commitment by the developer/owner to forego direct access to SH 20-26.

Idaho courts have the power to declare the rights, status and legal relations of persons affected by municipal ordinances. I.C. §§ 10-1201 & 1202.[6]

> An important limitation upon this jurisdiction is that, "a declaratory judgment can only be rendered in a case where an actual or justiciable controversy exists." This concept precludes courts from deciding cases which are purely hypothetical or advisory.

*State v. Rhoades*, 119 Idaho 594, 597, 809 P.2d 455, 458 (1991) (internal citation omitted). The right or status at issue "may invoke either remedial or preventative relief; it may relate to a right that has either been breached or is only yet in dispute or a status undisturbed but threatened or endangered; but, in either or any event, it must involve actual and existing facts." *Harris v. Cassia County*, 106 Idaho 513, 516-17, 681 P.2d 988, 991-92 (1984) (internal quotation omitted).

"Justiciability is generally divided into subcategories—advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions."

---

[6] Idaho Code section 10-1202 provides that "[a]ny person . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, statute or other legal relations thereunder." I.C. § 10-1202.

*Miles v. Idaho Power Co.*, 116 Idaho 635, 639, 778 P.2d 757, 761 (1989). The elements of a justiciable controversy include the following:

> A "controversy" in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of the parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Idaho Schools for Equal Educ. Opportunity v. Idaho State Bd. of Educ.,* 128 Idaho 276, 281-82, 912 P.2d 644, 649-50 (1996).

Therefore, courts will not rule on declaratory judgment actions which present questions that are moot or abstract. *Id.* at 282, 912 P.2d at 650. "An action for declaratory judgment is moot where the judgment, if granted, would have no effect either directly or collaterally on the plaintiff, the plaintiff would be unable to obtain further relief based on the judgment and no other relief is sought in the action." *Id.* Whether an issue is moot is to be determined at the time of the court's trial or hearing, and not at the time of commencing the action. *Id.* However,

> [t]he Court may nonetheless rule on a moot issue (1) when there is the possibility of collateral legal consequences imposed on the person raising the issue; (2) when the challenged conduct is likely to evade judicial review and thus is capable of repetition; and (3) when an otherwise moot issue raises concerns of substantial public interest.

*Stephen v. Sallaz & Gatewood, Chtd.*, 150 Idaho 521, 528, 248 P.3d 1256, 1263 (2011) (internal quotation omitted).

We now turn to the Agreement to determine whether it moots the question of access to SH 20-26 from Wiley's subdivision.

> Construction of the meaning of a contract begins with the language of the contract. If the contract's terms are clear and unambiguous, the determination of the contract's meaning and legal effect are questions of law and the meaning of the contract and the intent of the parties must be determined from the plain meaning of the contract's own words. If, however, the contract is determined to be ambiguous, the interpretation of the document is a question of fact which focuses upon the intent of the parties.

*Page v. Pasquali*, 150 Idaho 150, 153, 244 P.3d 1236, 1239 (2010). There is no justiciable controversy with regard to Wylie's claims under the Agreement because the Agreement unambiguously provides that his property will not have direct access to SH 20-26.

The Agreement provides that the 2006 Annexation/Zoning Order is "set forth in Exhibit B, which [is] attached hereto and by this reference incorporated herein as if set forth in full . . . ." The 2006 Staff Report is included as an exhibit to the 2006 Annexation/Zoning Order and its findings are therefore incorporated into the Agreement. The Agreement contains an unambiguous written commitment by the developer to forego direct access to SH 20-26. The incorporated 2006 Staff Report provides the following summary in regard to the proposed streets access for the development:

> The access to the development will be from N. Linder Road to the east and from W. Everest Lane to the west. A private commercial drive aisle will provide traffic circulation through the site. A connection will also be made to the stub (N. Gertie Place) provided from the south by Lochsa Falls Subdivision. The subject property does have frontage along Chinden Boulevard (State Highway 20-26) but is not proposing direct access to that facility.

This summary provides the total extent of access available to the developer of the Knighthill Center Subdivision—N. Linder Road, W. Everest Lane, and N. Gertie Place.

Other provisions of the Agreement demonstrate that the subdivision's sole access to SH 20-26 would be via W. Everest Lane. These include the signage provisions which indicate an exit from SH 20-26 onto W. Everest Lane, and the cross-access easement to W. Everest Lane. The preliminary plat accompanying the Agreement designates W. Everest Lane as the sole access from the subdivision directly to SH 20-26. Had there been any understanding that the developer could have direct access to SH 20-26, there certainly would have been additional conditions regarding that access, but none exist in the Agreement.

The terms of the Agreement are binding on Wylie because the Agreement provides that its terms and conditions "shall be binding on the 'Developer' and/or 'Owner' of the 'Property,' each subsequent owner and any other person acquiring an interest in the 'Property.'" Wylie obtained the Property via Warranty Deed in 2007 and is a subsequent developer and/or owner of the Property. Thus, Wylie is subject to the terms of the Agreement.

Since the Agreement unambiguously restricts the ability of Wylie's property to have direct access to SH 20-26, there is simply no justiciable issue based on the Agreement. Any

claim Wylie may have under the Agreement is moot and Wylie has failed to show that any of the exceptions to that doctrine apply. Other avenues of relief may have been available to him but he failed to pursue them. Wylie could have sought judicial review of the City's denial of his application for a variance, but apparently decided not to pursue that avenue. He was aware that he could seek to obtain an amendment to the Agreement, but apparently decided not to pursue that avenue.[7] At the oral argument of this case before the Court, Wylie's counsel contended that only the ITD could grant access to Wylie but did not then adequately explain why Wylie did not appeal denial by ITD of his application for an encroachment permit, a proceeding that has been stayed for over two years by stipulation of the parties. It is unclear why Wylie did not pursue any of these alternate avenues, choosing instead to try to obtain a declaratory ruling that is clearly foreclosed by the very terms of the Agreement. The district court correctly held that his contract claims failed to present a justiciable controversy.

**C. There Are No Justiciable Claims Regarding Ordinance No. 05-1171.**

Wylie's claims are not confined to those arising under the Agreement. The main thrust of his complaint is that the Ordinance is invalid, either because it is preempted by state law or an ultra vires act of the City. These claims are not rendered nonjusticiable by virtue of the Agreement. Although there is a provision in the Agreement requiring compliance by the developer with all city ordinances, that does not necessarily preclude Wylie from challenging, and obtaining a court ruling upon, the validity of the Ordinance. However, his claims regarding the Ordinance are equally without merit.

There is no question that ITD is vested with the authority to designate state highways as "controlled-access facilities and regulate, restrict or prohibit access to those highways." I.C. § 40-310(9). Nevertheless, a municipality has the authority to create specific development standards regarding roadways, rights-of way, grades, alignments and intersections under the Local Land Use Planning Act. I.C. § 67-6518. To the extent that these powers may overlap, a

---

[7] The Agreement provides that "[n]o change in the uses specified in this Agreement shall be allowed without modification of this Agreement." A modification of a development agreement can be made "only by the permission of the governing board after complying with the notice and hearings provisions of section 67-6509, Idaho Code." I.C. § 67-6511A. Wylie previously applied for, and obtained, a modification of the Agreement to increase the intensity of the development. In the narrative accompanying his application for that modification, Wylie acknowledged the term limiting access to SH 20-26. "We agree with, and do not intend to change the access points . . . that were approved on the previous preliminary plat." The accompanying preliminary plat, also acknowledged this term because it limits access to SH 20-26 from W. Everest Lane.

city is prohibited from directly regulating ITD in its administration of state highways. I.C. § 67-6528. However, ITD is required to consult with local agencies "on site plans and design of transportation systems within local jurisdictions." *Id.* Further, ITD acknowledges that local regulations must be in place to achieve its transportation goals and it "supports a continued cooperative relationship with cities and counties concerning local ordinances pursuant to Section 67-6511 through Section 67-6519, Idaho Code, where such ordinances are beneficial to the state highway system." IDAPA 39.03.48.200.

The Ordinance was a result of the cooperative efforts envisioned by the Legislature in I.C. § 67-6528 and does not usurp the authority of ITD, nor is it preempted by statute. The Ordinance defers to ITD's ultimate control over access to state highways because it only prohibits "approaches," which includes property connecting a shoulder or curb line to the edge of a state highway right-of way, whereas ITD's jurisdiction begins at the edge of a state highway right-of-way and continues throughout the highway. In other words, the Ordinance acknowledges the cooperative efforts that must be made to achieve complete access by an applicant to a state highway within the City. Additionally, the Ordinance requires that "access" to a state highway right-of-way, in terms of an encroachment permit, must be granted by ITD. The Ordinance further notes that any standards set forth in the Ordinance can be modified according to the recommendations of ITD staff. In sum, the Ordinance does not mandate terms of access for ITD. Rather, it regulates approaches and defers to ITD for any access within a state highway right-of-way. ITD participated in the drafting of the Ordinance, and found it beneficial to its own access goals. Such efforts embody the consultation and cooperation envisioned by the Legislature and do not usurp the authority of ITD.

Turning to the question of justiciability, Wylie has been unable to articulate how a judgment declaring the Ordinance invalid would provide him any relief. The Agreement clearly precludes direct access to SH 20-26 and the provisions of the Agreement are not dependent upon the Ordinance. Further, even if we were to declare the Ordinance invalid, ITD has denied Wylie's encroachment permit, which would still preclude his desired access. At the oral argument of this case, Wylie's counsel contended that, were the Court to invalidate the Ordinance, Wylie might then have a chance to convince ITD to grant the encroachment permit. However, a remote contingency is not sufficient to satisfy the requirements for a justiciable controversy. The denial of the encroachment permit was based upon safety and planning

-10-

considerations particular to ITD and not anchored upon the existence of the Ordinance. In essence, Wylie seeks an advisory ruling from this Court on his challenge to the Ordinance. Although the district court did not separately consider the justiciability of the Ordinance-based claims, they, also, are nonjusticiable in nature.

## IV.

## Conclusion

We affirm the district court's dismissal of Wylie's claims on the ground that they do not present a justiciable controversy. Costs on appeal are awarded to the Respondents.

Chief Justice EISMANN and Justices BURDICK, W. JONES and HORTON CONCUR.