# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51330-2023

| | |
|---|---|
| CARL P. JORDAN, an individual,    ) <br>    ) <br>   Plaintiff-Counterdefendant-    ) <br>   Respondent,    ) <br>    ) <br> v.    ) <br>    ) <br> AARON POWERS, an individual,    ) <br>    ) <br>   Defendant-Counterclaimant-    ) <br>   Appellant.    ) <br>    ) | Boise, June 2025 Term <br><br> Opinion filed: August 28, 2025 <br><br> Melanie Gagnepain, Clerk |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Teton County. Alan C. Stephens, District Judge.

The decision of the district court is <u>affirmed in part</u> and <u>reversed in part</u>.

Beard St. Clair Gaffney PA, Idaho Falls; and Spitzer Law, PLLC, Victor, for Appellant. Kathy Spitzer argued.

Holden, Kidwell, Hahn & Crapo, P.L.L.C., Idaho Falls, for Respondent. D. Andrew Rawlings argued.

_____

ZAHN, Justice.

This appeal concerns: (1) whether a strip of real property remained subject to a subdivision's covenants, conditions, and restrictions ("CC&Rs") after the county approved a boundary line adjustment and amended plat that purported to remove the property from the subdivision; and, (2) if the property was subject to the CC&Rs, whether they prevent the owner of real property from constructing a road on his property.

Aaron Powers owned a lot ("Lot One") in the Sorensen Creek Subdivision ("the Subdivision") and a large undeveloped parcel ("the Adjacent Parcel") that was adjacent to, but not part of, the Subdivision. He intended to develop the Adjacent Parcel into a new subdivision, but the Adjacent Parcel lacked access to a public road or a privately developed road. To solve that

problem, he wanted to construct a road on a sixty-foot-wide strip of land ("the Sixty-Foot Strip") that was part of Lot One.

When Powers approached members of the board of the Sorensen Creek Subdivision Homeowners Association ("HOA") seeking permission to construct the road, he was told that he would not be permitted to do so. He later applied to Teton County for an adjustment of the boundary line between Lot One and the Adjacent Parcel, which would result in the Adjacent Parcel effectively absorbing the Sixty-Foot Strip. Teton County approved the application, the boundary line was adjusted, and an amended plat of Lot One was recorded.

Carl P. Jordan, a homeowner in the Subdivision and a member of the HOA's board, filed a complaint in district court seeking to prevent construction of the road. He requested declaratory relief that: (1) Powers violated the Subdivision's CC&Rs by "splitting" Lot One when he secured the boundary line adjustment and amended plat for Lot One; (2) the CC&Rs continued to apply to the entirety of the originally platted Lot One, including the Sixty-Foot Strip; and (3) the CC&Rs prohibited construction of a road on the Sixty-Foot Strip. Jordan also requested injunctive relief preventing Powers from constructing the road. Powers filed a counterclaim that requested a declaratory judgment that the Sixty-Foot Strip was no longer subject to the CC&Rs.

Both parties filed cross motions for summary judgment. The district court ruled in favor of Jordan on both motions. The court granted the declaratory relief requested by Jordan and permanently enjoined Powers from constructing the road without first securing an amendment of the CC&Rs "and/or" approval from the HOA.

Powers appeals, arguing that the boundary line adjustment and plat amendment approved by Teton County removed the Sixty-Foot Strip from the purview of the CC&Rs. Alternatively, he argues that, even if the CC&Rs apply, they do not restrict his ability to construct the road.

We affirm the district court's declaration that the CC&Rs continue to apply to the Sixty-Foot Strip and its declaration that Powers failed to secure the approval required by the CC&Rs. We reverse the district court's declaration that the CC&Rs categorically prohibit the construction of a road and its declaration that the boundary line adjustment constituted a "lot split" that violated the CC&Rs. We also vacate the permanent injunction entered by the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A plat for the Subdivision was recorded in Teton County in 1984 ("1984 Plat"). The 1984 Plat is below, with highlighting added to reflect the approximate boundaries of Lot One as originally platted.



Leo and Irene Nikolas and Reed and Nan Harman owned the property comprising the Subdivision when the 1984 Plat was recorded. In 1993, Reed and Nan Harman, as officers of the Sorensen Creek Development Corporation, recorded CC&Rs governing the Subdivision. The CC&Rs define the "properties" to which they apply as those depicted on the 1984 Plat and provide that they "run with" those properties. The CC&Rs create an HOA, impose a variety of restrictions on the use and development of the properties, and require approval by an HOA Design Committee for certain changes.

In 1995, Leo and Irene Nikolas sold Lot One, which was approximately five acres, to Steven Lohman. They also sold Lohman the Adjacent Parcel, consisting of roughly sixty-nine acres, which was not part of the Subdivision. The Adjacent Parcel had previously been used for

agricultural purposes. It was not accessible by any public road or any developed private road. Instead, it had been historically accessed through Lot One, across a "two-track" dirt path.

In 2020, Powers purchased both Lot One and the Adjacent Parcel from Lohman. He planned to develop the Adjacent Parcel into a fourteen-lot subdivision. Because the Adjacent Parcel has no public road or developed private road access, Powers wanted to construct a road through Lot One. That new road through Lot One would connect the Adjacent Parcel to a public road on the other side of Lot One. If he were permitted to develop that new road passing through Lot One, residents of the new, fourteen-lot subdivision would use it to access the new subdivision. Powers contends that he spoke with homeowners in the Subdivision, including the HOA president, both before and after purchasing the properties, and they "agreed that access" to the Adjacent Property was through Lot One, and "did not raise any concerns with putting a road in for that purpose." Nevertheless, after the purchase, when he approached members of the HOA board requesting permission to construct the road, Powers was told he would not be permitted to do so.

Powers applied to Teton County to amend the plat for Lot One and to adjust the boundary line between Lot One and the Adjacent Property. Approval of the application would shift the boundary between Lot One and the Adjacent Parcel so that Lot One would be smaller ("Amended Lot One") and the Adjacent Parcel would be larger ("Amended Adjacent Parcel"). The Sixty-Foot Strip would become part of the Amended Adjacent Parcel, which would make the parcel partially adjacent to the public road (along the Sixty-Foot Strip). It is unclear exactly when the application was filed because it and other records associated with Powers' application are not part of the record on appeal.

In early July 2021, Jordan submitted a letter to the County opposing Powers' application. The County subsequently granted the application. The HOA then submitted a letter in late August 2021 requesting that the County reconsider its approval of the application. The Subdivision argued, in part, that the application should not have been approved because the CC&Rs prohibit construction of the road. The County did not reconsider. Neither the HOA nor any individual homeowner in the Subdivision filed any action under the Local Land Use Planning Act, chapter 65, title 67, Idaho Code, for judicial review of the County's decision. An amended plat for "Lot 1 Sorensen Creek Subdivision" and a boundary line adjustment were recorded in April 2022. The amended plat is below, with the Amended Lot One depicted in red, the Sixty-Foot Strip depicted

4

in blue, and the Adjacent Parcel depicted in green. The original Lot One consisted of the red and blue areas. The Amended Adjacent Parcel consists of the green and blue areas.



Powers later sold Amended Lot One and retained ownership of the Sixty-Foot Strip that was now part of the Amended Adjacent Parcel.

Jordan filed a complaint against Powers in district court.[1] He sought a declaratory judgment that Powers violated the CC&Rs by impermissibly splitting Lot One, that the CC&Rs continue to apply to the Sixty-Foot Strip, and that "the CC&Rs prohibit the construction of the road on the [Sixty-Foot Strip] (particularly using the process Powers is doing, and without consulting the [HOA] Design Committee)." He also sought both temporary and permanent injunctive relief to prevent Powers "from taking any further steps to construct a road across" the Sixty-Foot Strip.

Powers answered and filed a counterclaim seeking declaratory relief that the Sixty-Foot Strip is not subject to the CC&Rs because it is no longer a part of the Subdivision.

Both parties moved for summary judgment. The district court entered an order granting Jordan's motion for summary judgment and denying Powers' motion. In its order, the district court held that the County's land use decisions did not remove the encumbrances imposed by the

---

[1] Two other homeowners in the Subdivision were plaintiffs in the original complaint. After Powers answered and asserted counterclaims, those two plaintiffs sought to withdraw from the suit. They were dismissed by stipulation of the remaining parties, and an amended complaint was filed naming only Jordan as a plaintiff.

CC&Rs, and that Powers had not secured approval for the road from the HOA, as required by the CC&Rs. In the "Factual Background" section of its written order, the district court stated that Powers' effort to amend the boundary between Lot One and the Adjacent Property "violates the HOA [CC&Rs'] restrictions on lot splitting," but it did not address the issue in the "Analysis" section of the order. The district court also did not address Jordan's argument that the CC&Rs categorically prohibit construction of a road on the Sixty-Foot Strip. The district court's order granted "a temporary restraining order preventing [Powers] from continuing any alterations or improvements upon [the Sixty-Foot Strip] until such time as [Powers] exhausts all possible remedies through the HOA's processes proscribed [sic] in the [CC&Rs]." The order also stated that Jordan was the prevailing party and awarded him attorney fees and costs "in accordance with court rules," but failed to cite any statutory or contractual basis for the award of fees.

The district court then entered a judgment granting "Injunctive Relief in favor of [Jordan] . . . by way of a Temporary Restraining Order until further order of the court," but it did not further specify the nature of the injunctive relief. The district court also "awarded [Jordan] reasonable attorney fees pursuant to [Idaho Rule of Civil Procedure] 54(d)," but failed to identify a statutory or contractual basis for the fee award.

Powers filed a motion for reconsideration. He argued that the district court incorrectly concluded that: (1) he had not approached the HOA to secure approval for the road, and submitted a declaration stating that he had done so; (2) the Sixty-Foot Strip was subject to the CC&Rs, which he argued was error because the County's decisions removed the Sixty-Foot Strip from the scope of the CC&Rs, and Jordan had not sought judicial review of the County's decisions; and (3) the district court's decision effectively landlocked the Adjacent Parcel. He also argued that the district court erred by granting the temporary restraining order because the district court failed to explain the steps Powers needed to take to have it lifted. Finally, he argued that there was no basis to award Jordan attorney fees.

The district court denied Powers' motion for reconsideration. It subsequently issued a First Amended Judgment in which it provided additional relief to Jordan. The First Amended Judgment declared that: (1) the CC&Rs continued to apply to the Sixty-Foot Strip; (2) Powers violated the CC&Rs by "splitting" Lot One; (3) the CC&Rs "prohibit the construction of a road over and across [the Sixty-Foot Strip] for the purpose of accessing of another subdivision"; and (4) Powers "has not, as of the date hereof, completed the proscribed [sic] process required or contemplated" by the

6

CC&Rs "to allow him to construct a road over and across the [Sixty-Foot Strip] for the purpose of accessing of another subdivision."

The district court then entered a permanent injunction preventing Powers "from constructing (in whole or part) a road over and across [the Sixty-Foot Strip] for the purpose of accessing another subdivision, unless and until the [CC&Rs] are amended to allow for construction of such a road on the [Sixty-Foot Strip] and/or the [CC&Rs'] procedures for approval of such a road are complied with, as necessary." It dismissed Powers' counterclaim with prejudice. The district court awarded costs and fees to Jordan. Though the First Amended Judgment does not provide any contractual or statutory basis to award fees, the court's order denying Powers' motion for reconsideration cites Idaho Code section 12-121 and concludes that Powers litigated the matter "in a manner the [c]ourt finds to be unreasonable, if not frivolous." Powers timely appealed.

## II.     ISSUES ON APPEAL

1. Whether the district court erred by granting Jordan's request for summary judgment on the declaratory judgment claims.
2. Whether the district court erred by granting Jordan's request for a permanent injunction.
3. Whether the district court erred in granting Jordan his fees and costs below.
4. Whether either party is entitled to attorney fees on appeal.

## III.     ANALYSIS

**A. The district court did not err by declaring that the CC&Rs apply to the Sixty-Foot Strip or that Powers was required to secure approval to construct a road, but it did err by declaring that the CC&Rs categorically prohibit construction of a road and that the boundary line adjustment violated the CC&Rs.**

On appeal, Powers contends that, as a threshold matter, the district court erred because Jordan lacked authority to seek any declaratory relief regarding the CC&Rs. He also argues that the district court erred on the merits. He argues that the district court erred by failing to: (1) properly distinguish between a boundary line adjustment, allegedly permitted by the CC&Rs, and a lot split, which is allegedly not permitted; (2) recognize that, by the terms of the CC&Rs, a result of the boundary line adjustment is that the CC&Rs no longer apply to the Sixty-Foot Strip; and (3) recognize that, if the CC&Rs did apply to the Sixty-Foot Strip, they do not prohibit construction of a road.

This Court reviews a district court's decision on summary judgment using the same standard used by the district court. *Rose v. Martino*, ___ Idaho ___, ___, 562 P.3d 972, 982 (2025). "Summary judgment is proper if 'the movant shows that there is no genuine dispute as to any

7

material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting I.R.C.P. 56(a)). "When both parties move for summary judgment, 'the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences.'" *Tiller White, LLC v. Canyon Outdoor Media, LLC*, 160 Idaho 417, 419, 374 P.3d 580, 582 (2016) (quoting *Shawver v. Huckleberry Ests., L.L.C.*, 140 Idaho 354, 360–61, 93 P.3d 685, 691–92 (2004)).

The district court issued four declarations in granting Jordan's request for declaratory relief. It declared that: (1) the CC&Rs continued to apply to the Sixty-Foot Strip; (2) the CC&Rs categorically prohibit construction of a road on the Sixty-Foot Strip; (3) the CC&Rs required Powers to secure approval from the HOA prior to construction of a road, which he has not done; and (4) the boundary line adjustment and amended plat map violated the CC&Rs.

We first address and reject Powers' argument that the district court erred by granting any declaratory relief because Jordan was not entitled to seek it. Turning to the merits of the claims for declaratory relief, we affirm the district court's declaration that the CC&Rs continue to apply to the Sixty-Foot Strip and its declaration that Powers was required to secure approval for construction of the road from the HOA and failed to do so. But we reverse the district court's declaration that the boundary line adjustment was prohibited by the CC&Rs and its declaration that the CC&Rs categorically prohibit construction of a road on the Sixty-Foot Strip.

   1. *Jordan was entitled to seek appropriate declaratory relief to enforce the CC&Rs.*

Powers argues that the district court erred by granting any declaratory relief because, while Jordan has the "right to enforce" the CC&Rs as a property owner in the Subdivision, he does not have authority to ask "a [c]ourt to declare the rights, status, and other legal relations of that document." In response, Jordan contends that his attempt to enforce the CC&Rs necessarily encompasses the right to seek declaratory relief as to their scope. We agree with Jordan.

Article X, section 1 of the CC&Rs provides that "[t]he Association, or *any owner*, *shall have the right to enforce, by any proceeding at law or in equity*, all restrictions, conditions, covenants, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration." (Emphasis added.) Jordan sought injunctive relief to prevent Powers from developing a road on the Sixty-Foot Strip, which was an effort to enforce the CC&Rs. His entitlement to that injunctive relief was premised on the district court determining that the CC&Rs

(1) continued to apply to the Sixty-Foot Strip and (2) prohibited the construction of a road, either categorically or absent certain approvals. Jordan's request for declaratory relief on those two questions was integral to his request for injunctive relief. Both were part of an attempt to enforce the CC&Rs going forward.

*Fletcher v. Lone Mountain Road Association*, 165 Idaho 780, 452 P.3d 802 (2019), supports this conclusion. The Fletchers sought attorney fees under a provision of their CC&Rs containing enforcement language similar to that of Article X, section 1 in this case:

> Any Owner . . . shall have the right to enforce, by any proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens, and charges now or hereafter imposed by this Declaration, and in such action shall be entitled to recover costs and reasonable attorneys' fees as are ordered by the Court.

*Id.* at 784, 452 P.3d at 806 (emphasis omitted). The district court declined to grant attorney fees, holding that a declaratory action was not the type of enforcement action anticipated by the CC&Rs. *Id.* This Court reversed the district court's decision and explained:

> [T]he Fletchers brought this declaratory judgment action in direct response to the Association's efforts to maintain Lone Mountain Road in a manner that was inconsistent with the CC&Rs. At its core, the action was brought to require strict compliance with the unambiguous terms of the CC&Rs and make it clear that the Association has no authority to maintain the road and that it has no authority to demand contributions from the Fletchers or other lot owners for past maintenance expenditures. The district court's conclusion that this was not an action to "enforce" the CC&Rs was erroneous . . . .

*Id.* at 785–86, 452 P.3d at 807–08. As in *Fletcher*, Jordan is permitted to seek appropriate declaratory relief to enforce the CC&Rs.

2. *The district court did not err by declaring that the CC&Rs continue to apply to the Sixty-Foot Strip.*

The district court declared that, notwithstanding the boundary line adjustment and amended plat map, the CC&Rs continue to apply to the entirety of Lot One as reflected in the 1984 Plat, including the Sixty-Foot Strip. In doing so, it relied primarily on two propositions: (1) that the "properties" to which the CC&Rs apply are those set out in the 1984 Plat and (2) that the County does not have the power to unilaterally unencumber property within the subdivision and the scope of the CC&Rs. Powers argues that, by their terms, the CC&Rs apply only to property within the Subdivision, that they contemplate that the Subdivision plat might be amended, and that the Sixty-Foot Strip was not within the Subdivision after the County's decisions. We affirm the district court and hold that the Sixty-Foot Strip remains subject to the CC&Rs.

9

"Idaho recognizes the validity of covenants that restrict the use of private property." *Pinehaven Plan. Bd. v. Brooks*, 138 Idaho 826, 829, 70 P.3d 664, 667 (2003). "The burdens imposed by restrictive covenants run with the land, i.e., they may be enforced against one who purchases real property with notice of the covenants." *Indep. Sch. Dist. of Boise City v. Harris Fam. Ltd. P'ship*, 150 Idaho 583, 588, 249 P.3d 382, 387 (2011). "When a court interprets a restrictive covenant, it is to apply generally the same rules of construction as are applied to any contract or covenant." *Brown v. Perkins*, 129 Idaho 189, 192, 923 P.2d 434, 437 (1996). If the plain language of the restrictive covenant is unambiguous, the court's interpretive task begins and ends with that plain language. *Pinehaven Plan. Bd.*, 138 Idaho at 829, 70 P.3d at 667. "However, because restrictive covenants are in derogation of the common law right to use land for all lawful purposes, the Court will not extend by implication any restriction not clearly expressed." *Id.*

Powers argues that the CC&Rs do not apply to the Sixty-Foot Strip because they indicate that they apply only to property in the Subdivision, and the Sixty-Foot Strip was removed from the Subdivision. Powers further contends that the CC&Rs permit the removal. Powers' argument ignores the plain language of the CC&Rs:

> [A]ll of the *properties described* shall be held, sold and conveyed subject to the following easements, covenants, conditions and restrictions, which are for the purpose of protecting the value and desirability of, and which shall run with, the *real property* and be binding on all parties having any right, title or interest in the *described properties or any part thereof*, their heirs, successors and assigns and shall inure to the benefit of each owner thereof.

(Emphasis added.) The CC&Rs unambiguously apply to "the properties described," the "real property," and "the described properties or any part thereof." The CC&Rs define the term "properties" as:

> [T]hat certain real property known as Sorensen Creek, *in accordance with the Plat filed for record on the 29th day of May, 1984, in Teton County, Idaho as recordation Plat No. 94873* and such additions thereto as may hereafter be brought within the jurisdiction of the [HOA].

(Emphasis added.) These CC&R provisions unambiguously provide that the CC&Rs apply to the properties set out in the 1984 Plat. There is no dispute that the Sixty-Foot Strip is part of the Lot One set out in the 1984 Plat. Because the plain terms of the CC&Rs provide that they apply to the properties depicted on the 1984 Plat, Powers' argument that the CC&Rs now only apply to the properties depicted on the 2022 Amended Plat is unpersuasive. *See Best Hill Coal. v. Halko, LLC*,

144 Idaho 813, 817, 172 P.3d 1088, 1092 (2007) ("If a covenant is unambiguous, the court must apply its plain meaning as a matter of law.").

Nothing in the CC&Rs indicates that the owner of property to which the CC&Rs apply can unilaterally remove that property (or some portion of it) from the scope of the CC&Rs by filing an amended plat. Courts in other jurisdictions faced with similar questions regarding the effect of an amended plat on the applicability of CC&Rs have come to similar conclusions. *See, e.g.*, *View Condominium Owners Ass'n v. MSICO, L.L.C.*, 127 P.3d 697, 702–03 (Utah 2005) (explaining that the plain terms of a declaration of covenants, conditions, and restrictions still apply despite an amended plat); *Hawkins View Architectural Control Comm. v. Cooper*, 250 P.3d 380, 384–85 (Or. Ct. App. 2011) (explaining that a lot is what is described in the CC&Rs, not a subsequent plat); *Brazinski v. Bd. of Cnty. Comm'rs of Teton Cnty.*, 546 P.3d 545, 553 (Wyo. 2024) ("An amendment to zoning has no effect on any contractual building restrictions or restrictive covenants. Approval of a land use plan by the county zoning authority does not override a violation of the covenants, which can be enforced in a private action between landowners.").

Because the CC&Rs expressly apply to and run with the land identified on the 1984 Plat, of which the Sixty-Foot Strip is a part, the district court did not err by determining that the Sixty-Foot Strip remains subject to the CC&Rs even after Powers secured a boundary line adjustment and amended plat for Lot One from the County.

3.  *The district court erred by declaring that the CC&Rs prohibit construction of a road on the Sixty-Foot Strip.*

The district court declared that:

> [T]he [CC&Rs]—specifically Article VI, [section] 3; Article VI, [section] 4(f); Article VII, [section] 3(a); and Article VII, [section] 3(c) and 3(g) together with Article X, [section] 5 of the [CC&Rs]—prohibit the construction of a road over and across [the Sixty-Foot Strip] for the purpose of accessing of another subdivision.

Article VI, section 3 is addressed generally to "Building Design" and includes a variety of restrictions on the construction of buildings. Article VI, section 4(f) addresses the removal of trees. Article VII, section 3(a) provides that any residential lot "shall be used exclusively for residential purposes." Article VII, section 3(c) prohibits "noxious or offense activity." Article VII, section 3(g) prohibits keeping trailers, truck campers, or boats on any lot if it is visible from a neighboring lot. Article X, section 5 provides that violations of the CC&Rs constitute nuisances.

Powers argues that, even if the CC&Rs do apply to the Sixty-Foot Strip, none of the provisions referenced by the district court categorically prohibit construction of a road. He argues

11

that Article VI, section 3(a) provides, *inter alia*, that it is the "intent that driveway accesses to the interior subdivision access road be minimized," but his road would access a public road, not the "interior subdivision access road." He notes that Article VI, section 4(f) prohibits tree removal, but not at the location of "improvements," such as his road. He further contends that Article VII, section 3(a), regarding the use of residential lots for non-residential purposes, is inapplicable given that there are clearly roads in the Subdivision and those roads are necessary for residential purposes. Finally, he points out that the remaining provisions cited by the district court are general nuisance provisions that do not concern roads.

Though ordinary principles of contractual interpretation generally apply to the interpretation of restrictive covenants, "since restrictive covenants are in derogation of the common law right to use land for all lawful purposes, the Court will not extend by implication any restriction not clearly expressed." *Berezowski v. Schuman*, 141 Idaho 532, 535, 112 P.3d 820, 823 (2005). "Further, all doubts are to be resolved in favor of the free use of land." *Id.* "[R]estrictive covenants . . . are strictly construed in favor of the free use of property." *Smith v. Shinn*, 82 Idaho 141, 147, 350 P.2d 348, 351 (1960) (citation omitted). Applying these standards, our review of the CC&Rs reveals that none of the provisions cited by the district court expressly prohibit Powers from constructing a road across Lot One.

Starting with Article VI, section 1, and Article VII, section 3(a), it is doubtful that they apply to Lot One. Each places restrictions on lots classified as "residential." Article VI, section 1 provides that:

> The following standards and restrictions [in Article VI] are applicable to the construction, remodeling, alteration and exterior refinishing of any and all improvements and site preparation *upon each lot classified as residential dwelling*.

(Emphasis added.) Likewise, Article VII, section 3(a) provides that:

> *Each residential lot* shall be used exclusively for residential purposes, and no more than one family (including its servants and transient guests) shall occupy such residence . . . .

(Emphasis added.) To determine whether Lot One is a "residential dwelling" or "residential lot," we turn to Article VII, section 1, which addresses the classification of property within the Subdivision:

> All land within the [Subdivision] has been classified into the following areas:
> (a) Residential;
> (b) Public access route to National Forest;

12

(c) Miscellaneous areas;

(d) Sorensen Creek Drive, a private road.

As more particularly shown on the plat of the Subdivision on file in the Office of the Teton County Clerk, Teton County, Idaho as Plat No. 94873.

While the 1984 Plat clearly identifies the property to which the CC&Rs apply, it does not identify any properties, including Lot One, as residential. Because courts shall not extend by implication any restriction not clearly expressed and because all doubts are to be resolved in favor of the free use of land, the district court erred when it applied CC&R restrictions on residential lots to Lot One, which is not classified as a residential lot.

Jordan's argument that the CC&R's prevent Powers from building a road across Lot 1 are entirely premised on the assertion in his Respondent's Brief that the 1984 Plat designated Lot 1 as a "residential" lot. Jordan argued that, given the residential designation, the CC&Rs required Powers to use the original Lot 1, including the Sixty-Foot Strip, for residential purposes and the access road was not a residential purpose because it would serve more than one household. Jordan also asserted that the CC&Rs prevented the removal of trees on residential lots and limited the number of driveways permitted on residential lots. However, when questioned at oral argument about the 1984 Plat, Jordan's counsel conceded that the plat did not depict any residential lots and his representation concerning the classification of Lot 1 was made in error. Given this concession and our own observation that the 1984 Plat does not classify Lot 1 as residential, we conclude that neither Article VI, section 1, nor Article VII, section 3(a) categorically prohibits Powers from constructing a road across the Sixty-Foot Strip.

Jordan next argues that Article VII, section 3(c) and (g) prohibit construction of a road. Article VII, section 3(c) provides that "[n]o noxious or offensive activity shall be carried on upon [sic] any lot" and prohibits owners from doing anything or placing anything on a lot which may be considered a nuisance. That general, vague language does not clearly and categorically prohibit construction of a road.

Article VII, section 3(g) limits keeping, placing, or maintaining trailers, truck campers, or boats on lots so they are visible from any neighboring property. The district court provides no explanation for how that provision could be read to clearly prohibit construction of a road. If the district court intended to rely on Article VI, section 3(g), which applies only to residential lots and references a "concern" that lots adjoining "the existing county road" should be kept "attractive and well kept," that subsection does not clearly prohibit construction of a road.

Furthermore, Article X, section 5 does not clearly prohibit construction of a road. As Powers notes, it provides generally that "any restriction, condition or covenant in this Declaration set forth, if violated in whole or in part, is declared to be and shall constitute a nuisance . . . ." It says nothing about the construction of roads and no other provision of the CC&Rs indicates that constructing a road is a nuisance.

In sum, none of the CC&R provisions cited by the district court clearly prohibit construction of a road across Lot 1. The district court therefore erred in declaring that the CC&Rs prohibited Powers from constructing the road across the Sixty-Foot Strip.

4. *The district court correctly determined that Powers has not secured approval to construct the road as required by the CC&Rs.*

The district court declared that Powers

> has not, as of the date hereof, completed the proscribed [sic] process required or contemplated by the [CC&Rs]—including, but not limited to, Article V, [sections] 3, 5, and 7; and Article VII, [section] 2(a) of the [CC&R]—to allow him to construct a road over and across the [Sixty-Foot Strip] for the purpose of accessing of another subdivision. Having failed to go through these processes is another reason that construction of a road is prohibited across [the Sixty-Foot Strip] for the purpose of accessing of another subdivision.

Article V of the CC&Rs generally concerns the creation, powers, and responsibilities of the HOA Design Committee. Section 3 provides the duties of the Design Committee. Section 5 provides that the committee "may" create "rules and regulations, to be known as 'Design Committee Rules'" that must be available to lot owners upon request and "shall have the same force and effect as if they were a part of these Sorensen Creek restrictions." Section 7 provides that the Design Committee may issue estoppel certificates reflecting its decisions on applications submitted to it.

Article VII, section 2(a) of the CC&Rs requires that all improvements must first be approved by the Design Committee:

> No building, structure, sign, fence, refinishing or improvement of any kind shall be erected, placed or permitted to remain on any structure, lot or tract, and no excavation or other work which in any way alters any lot from its natural or improved state existing on the date such lot was first conveyed in fee by Declarants to an owner shall be erected, placed, done or permitted to remain on any structure lot or tract until the plans, specifications and exterior material samples and color selections therefor have been approved in writing and a building permit has been issued by the design committee.

Powers concedes in his briefing that "[a] road is an improvement." Article VII, section 2 provides that the preapproval requirement applies to "all land, regardless of classification." Because the

14

Sixty-Foot Strip is land to which the CC&Rs apply, the Design Committee provisions apply to the Sixty-Foot Strip, regardless of whether it is classified as a residential lot. It follows that the CC&Rs make approval by the Design Committee a prerequisite to construction of the road.

Powers argues that he should not be required to secure approval from the Design Committee because there are no administrable standards articulated in the CC&Rs that might guide that committee. He notes that he did seek approval for his road from members of the HOA board and offered various accommodations, like landscaping, access to the road from neighboring lots, and use of a "fire pond" that he intended to construct on the Adjacent Property. He asserts that the fact that the HOA board rejected his request notwithstanding these concessions "highlight[s] the lack of criteria or guidance." Finally, he complains that the CC&Rs do not indicate how to submit proposals to the Design Committee, and no one with whom he spoke, including HOA board members, directed him to the Design Committee.

We are unpersuaded by Powers' argument that the CC&R provisions concerning the Design Committee are unenforceable. Powers is effectively asking us to conclude that he did not need to seek the Design Committee's approval because the Design Committee could not have denied the proposal without exceeding its authority under Idaho law. According to Powers, the CC&Rs cannot lawfully delegate authority to the Design Committee to approve or deny a proposal unless they include specific provisions related to the type of structure or improvement at issue in the proposal. Powers cites no caselaw in support of this proposition, and we decline to adopt it.

In this case, Article V, section 5 of the CC&Rs directs the Design Committee to promulgate rules and regulations. There is no indication in the record that Powers requested a copy of those rules or submitted an application seeking approval to construct his road. It is impossible to say whether the Design Committee exceeded its authority when Powers has made no proposal to it and has secured no decision from it.

As to Powers' complaint that the CC&Rs do not explain how to reach the Design Committee, and that he has contacted members of the HOA board and they did not volunteer information about the Design Committee or direct him to it, the CC&Rs provide that the Design Committee has a "duty" to "consider and act upon" the "proposals for plans submitted to it from time to time," and any rules adopted by the Design Committee "shall be available for each lot owner." The CC&Rs put Powers on notice of the requirement that he submit an application to the Design Committee. If Powers had sought information from the HOA board members about how

15

to submit a proposal to the Design Committee, and the board members refused to provide the information, or if there is no Design Committee, he may have an argument that it was impossible for him to comply with the pre-approval requirement. But that is not the case here.

We hold that the district court did not err when it declared that Powers was required to secure approval from the Design Committee before beginning construction of the road and that he had not done so.

5. *Because it addressed only a moot question, the district court erred by granting declaratory relief that the boundary line adjustment constituted a lot split prohibited by the CC&Rs.*

Jordan requested a declaratory judgment that Powers violated the CC&Rs when he sought and was granted a boundary line adjustment by Teton County. Though Jordan was not categorically precluded from pursuing declaratory relief, he was not entitled to seek declaratory relief as to a moot question. Because the question of whether the boundary line adjustment violated the CC&Rs is moot, we hold that the district court erred by granting declaratory relief on that issue.

The authority of Idaho's courts to issue declarations under the Declaratory Judgment Act is limited by principles of justiciability. *Wylie v. State, Idaho Transp. Bd.*, 151 Idaho 26, 31, 253 P.3d 700, 705 (2011). Courts asked to grant declaratory relief are precluded from doing so where the request is for a declaration that is "purely hypothetical or advisory." *Bliss v. Minidoka Irrigation Dist.*, 167 Idaho 141, 158, 468 P.3d 271, 288 (2020) (quoting *Bettwieser v. N.Y. Irrigation Dist.*, 154 Idaho 317, 326, 297 P.3d 1134, 1143 (2013)). "[C]ourts will not rule on declaratory judgment actions which present questions that are moot or abstract." *Wylie*, 151 Idaho at 31, 253 P.3d at 705. "An action for declaratory judgment is moot where the judgment, if granted, would have no effect either directly or collaterally on the plaintiff, the plaintiff would be unable to obtain further relief based on the judgment and no other relief is sought in the action." *Id.* (quoting *Idaho Schs. for Equal Opportunity ex rel. Eikum v. Idaho State Bd. of Educ.*, 128 Idaho 276, 282, 912 P.2d 644, 650 (1996)).

Though the language from these cases is couched in terms of mootness of "actions," as opposed to "claims," a claim for declaratory relief may also be moot where, though there is some other relief sought in the action, the declaration sought through that claim would have no effect either directly or collaterally on the plaintiff, and the plaintiff would be unable to obtain further relief based on it. *See Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 388, 405, 111 P.3d 73, 90 (2005) (affirming summary dismissal of claims for declaratory relief as moot though plaintiff sought more than declaratory relief in the action), *overruled on other grounds by Farber v. Idaho*

*State Ins. Fund*, 152 Idaho 495, 272 P.3d 467 (2012). Even where an action is not moot because there are other viable claims asserted, a party is not permitted to seek, and a court should not grant, a purely advisory declaration that would have no effect on the plaintiff, directly or collaterally, and would provide no basis for relief in that or any other action.

The controversy at issue between Jordan and Powers concerns whether the CC&Rs prohibit Powers from constructing a road on the Sixty-Foot Strip. Whether the boundary line adjustment violated the CC&Rs does not resolve the issue of whether the CC&Rs continue to apply to the Sixty Food Strip. Rather, as discussed above, that question is resolved by other CC&R provisions indicating that they apply to the properties identified on the 1984 Plat. Given these circumstances, determining whether the boundary line adjustment violates the CC&Rs amounts to no more than an advisory opinion. Jordan's request for a declaratory judgment on this issue is therefore moot and the district court erred in ruling on it.

## B. The permanent injunction issued by the district court must be modified on remand.

"The object of injunctive relief is to prevent injury, threatened and probable to result, unless interrupted." *Gem State Roofing, Inc. v. United Components, Inc.*, 168 Idaho 820, 834, 488 P.3d 488, 502 (2021) (quoting *Miller v. Ririe Joint Sch. Dist. No. 252*, 132 Idaho 385, 388, 973 P.2d 156, 159 (1999)). "[T]he decision whether to grant injunctive relief is committed to the sound discretion of the trial court." *Fischer v. Bd. of Trs. of Meridian Joint Sch. Dist. No. 2*, 131 Idaho 856, 856–57, 965 P.2d 1292, 1292–93 (1998). When applying the abuse of discretion standard, this Court asks "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

In its Judgment issued following its decision on the cross-motions for summary judgment, the district court stated: "Injunctive Relief in favor of [Jordan] is hereby ordered by way of a Temporary Restraining Order until further order of the court." The Judgment itself provided no indication of what conduct was restrained. But the court's order on summary judgment stated that the court would grant a temporary restraining order "preventing [Powers] from continuing any alterations or improvements upon [the Sixty-Foot Strip] until such time as [Powers] exhausts all possible remedies through the HOA's processes proscribed [sic] in the [CC&Rs]." In his motion for reconsideration, Powers argued, *inter alia*, that this temporary restraining order violated Idaho

17

Rule of Civil Procedure 65(d)(1) because it did not state the reasons why the order was issued, state the terms of the order specifically, or describe in reasonable detail the act or acts restrained.

In its order denying Powers' motion for reconsideration, the court "recognize[d] some error in its prior decision" and stated that it was taking the "opportunity to clarify its ruling and issue a permanent injunction preventing Powers from continuing on, in whole or in part, with construction of a road across Lot 1." The court indicated it would "issue a separate Amended Judgment and Injunctive Order, in compliance with the requirements of [Rule] 65(d), contemporaneous with this opinion."

The district court then issued the First Amended Judgment, which permanently enjoined Powers as follows:

> AARON POWERS is hereby PERMANENTLY ENJOINED from constructing (in whole or in part) a road over and across [the Sixty-Foot Strip] for the purpose of accessing of another subdivision, unless and until the [CC&Rs] are amended to allow for construction of such a road on the [Sixty-Foot Strip] and/or the [CC&Rs'] procedures for approval of such a road are complied with, as necessary.

The district court's First Amended Judgment also included the declaratory relief discussed above.

On appeal, Powers asserts the district court erred in three respects by issuing the permanent injunction. First, he cites *Hood v. Poorman*, 171 Idaho 176, 519 P.3d 769 (2022), for the proposition that "[a] permanent injunction requires a showing of threatened or actual irreparable injury." He argues that the district court "did not discuss or apply this standard when it enjoined [him] from building a road on his property." Second, he argues that the permanent injunction, like the temporary injunction before it, does not comply with the requirements of Rule 65(d) because it improperly refers to the CC&Rs and requires compliance with the procedures set out in the CC&Rs for approval of the construction of his road without articulating what those procedures are. Third, he argues that because "[n]owhere in the CC&Rs is the construction of a road prohibited, . . . there is no need for amendment and no procedures with which Powers must comply."

Regarding the first argument, Powers correctly notes that some of our cases, including *Hood*, 171 Idaho at 190, 519 P.3d at 783, have stated that a finding of "threatened or actual irreparable injury" is a prerequisite for issuance of a permanent injunction. But *Hood* did not involve an injunction requiring compliance with contractual obligations such as CC&Rs. The distinction is significant when it comes to the prerequisites for issuing a preliminary injunction.

18

In *Jacklin Land Co. v. Blue Dog RV, Inc.*, the Court held that, in the context of an injunction to require compliance with restrictive covenants, the party requesting the injunction is "not required to show that it will suffer irreparable harm in order to be granted injunctive relief to enforce the restrictive covenants." 151 Idaho 242, 249, 254 P.3d 1238, 1245 (2011). "The right to enjoin the breach of restrictive covenants does not depend upon whether the covenantee will be damaged by the breach; the mere breach is sufficient ground for interference by injunction." *Id.* (quoting 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 262 (2005)). The district court did not err by failing to make a finding of irreparable injury when none was required.

Next, Powers argues that the injunction should not reference the CC&Rs and require compliance with them without describing the procedures he must follow. Rule 65(d)(1) requires that "every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail, and not by referring to the complaint or other document, the act or acts restrained or required." I.R.C.P. 65(d)(1). This Court has understood the function and purpose of the requirements of Rule 65(d)(1) as "prevent[ing] the issuance 'of an order so vague that an enjoined party may unwittingly and unintentionally transcend its bounds.'" *Citizens Against Range Expansion v. Idaho Fish & Game Dep't*, 153 Idaho 630, 634–35, 289 P.3d 32, 36–37 (2012) (quoting *Petrello v. White*, 533 F.3d 110, 114 (2d Cir. 2008)). As such, "the focus of the analysis is whether the 'enjoined party can ascertain from the four corners of the order precisely what acts are forbidden.'" *Snap! Mobile, Inc. v. Vertical Raise, LLC*, 173 Idaho 499, 524, 544 P.3d 714, 739 (2024) (emphasis omitted) (quoting *Citizens Against Range Expansion*, 153 Idaho at 634–35, 289 P.3d at 36–37).

We agree that a requirement of compliance with the CC&R "procedures for approval of such a road" as a necessary condition on construction of the road is insufficiently specific. In response to this argument, Jordan points to the district court's decision on Powers' motion for reconsideration as "provid[ing] the steps Powers must take before building an improvement on the [Sixty-Foot Strip]." The district court's First Amended Judgment does not make this reference. However, even if it did, it would still fail to meet the requirements of Rule 65.

The point of the requirements in Rule 65(d)(1) is to ensure that a person subject to a permanent injunction "can ascertain from the four corners of the order precisely what acts are forbidden or required." *Snap! Mobile, Inc.*, 173 Idaho at 523, 544 P.3d at 738 (internal quotation marks omitted) (quoting *Citizens Against Range Expansion*, 153 Idaho at 634–35, 289 P.3d at 36–

37). The four corners of the order must describe what is required. The order in this case fails to do so. Pointing back to another order, like an order denying a motion for reconsideration, would also fail this requirement. None of this is to suggest that the district court is required to walk Powers step-by-step through the CC&Rs in an order entering an injunction. For example, if the district court's view is that the CC&Rs do not permit construction of the road without written approval of the HOA Design Committee, it may be as simple as entering an order prohibiting construction of the road without written approval of the HOA Design Committee.

Last, Powers argues that the district court erred when it issued the injunction because "there is no need for amendment and no procedures with which Powers must comply" because "[n]owhere in the CC&Rs is the construction of a road prohibited." However, the CC&Rs still require that Powers secure approval from the HOA Design Committee before constructing any improvements; therefore, the district court properly enjoined Powers from proceeding with the construction of his road absent that approval.

For the reasons discussed above, we vacate the permanent injunction issued by the district court and remand for further proceedings consistent with this opinion.

## C. The district court's grant of attorney fees and costs below are vacated and remanded.

The district court awarded Jordan costs and fees against Powers totaling $23,453.24. It awarded $21,929.50 in attorney fees, $323.74 in costs, and $1,200 in discretionary costs. The court indicated in its order denying Powers' motion for reconsideration that it was ordering Powers to pay attorney fees under Idaho Code section 12-121. Because we are vacating the judgment below and are significantly modifying the relief provided, we also vacate the district court's grant of attorney fees and costs to Jordan and remand to the district court for further proceedings, which may result in a different determination concerning the prevailing party and entitlement to attorney fees. *See Shore v. Peterson*, 146 Idaho 903, 914, 204 P.3d 1114, 1125 (2009) ("A determination on prevailing parties is committed to the discretion of the trial court.").

## D. Neither party is entitled to attorney fees on appeal.

Both Powers and Jordan request attorney fees on appeal pursuant to Idaho Code section 12-121. "Where both parties prevail in part on appeal, this Court does not award attorney fees to either party." *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 23, 278 P.3d 415, 425 (2012). Because we affirm in part and reverse in part, both parties partially prevailed on appeal, and we decline to grant either party attorney fees on appeal.

20

## IV. CONCLUSION

For the reasons stated above, we vacate the permanent injunction entered by the district court, partially affirm and partially reverse the declaratory relief granted by the court, vacate the court's order awarding costs and fees, and remand for proceedings consistent with this opinion.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.